UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| O&M HALYARD, INC. § | |
| § | |
| v. § | CIVIL NO. 4:22-CV-622-SDJ |
| § | |
| SRI TRANG USA, INC. ET AL. § | |

## MEMORANDUM OPINION AND ORDER

Defendants have filed a motion to stay proceedings in this trademark infringement case pending the resolution of related cancellation actions brought by Defendants in the United States Patent and Trademark Office's (USPTO) Trademark Trial and Appeal Board (TTAB). The motion will be denied. Defendants have not shown that any potential efficiencies to be gained by awaiting the TTAB's decision warrant a stay. To the contrary, granting the stay motion would unnecessarily delay the final adjudication of this suit.

### I. BACKGROUND

Plaintiff O&M Halyard develops, manufactures, and sells medical products and supplies, including medical gloves, worldwide. (Dkt. #1 ¶¶ 11–12). Relevant to the instant case, O&M Halyard owns U.S. Trademark Registration Numbers 2596539 and 3099894 for purple and grey medical gloves. Defendants Sri Trang Gloves (Thailand) Public Company Limited; its United States subsidiary, Sri Trang USA, Inc.; and Sri Trang Agro-Industry Public Company Limited (collectively, "Sri Trang") are likewise glove manufacturers. (Dkt. #10 at 5). At some point, Sri Trang began

1

manufacturing medical gloves like those allegedly protected by O&M Halyard's trademarks, and O&M filed this lawsuit to protect the marks. (Dkt. #1 ¶¶ 24–28).

In its complaint, O&M Halyard brings federal claims against Sri Trang for trademark infringement, trademark counterfeiting, and trademark dilution, as well as false designation of origin, passing off, and unfair competition. O&M Halyard also asserts a claim for trademark dilution under Texas statutory law, as well as claims under Texas common law for trademark infringement, unfair competition, false designation of origin, unjust enrichment, and intentional interference with economic advantage.

Less than two months after this lawsuit was initiated, Sri Trang filed Cancellation Numbers 92080571 and 92080584 before the TTAB requesting that the TTAB cancel O&M Halyard's trademark registrations for purple and grey medical gloves. (Dkt. #10 at 6). The TTAB consolidated the cancellation requests and suspended the actions pending the outcome of this litigation. (Dkt. #14 at 3). Sri Trang asks the Court instead to stay proceedings in this case pending the outcome of the TTAB actions.

## II. LEGAL STANDARD

The Court has broad discretion to stay a pending matter to control its docket and serve the interest of justice. *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990). Proper consideration of a stay "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55, 57 S.Ct. 163, 81 L.Ed. 153 (1936). If there is "even a fair possibility" that a stay will damage someone else, then the proponent bears the burden of showing "a

2

clear case of hardship or inequity." *Id.* at 255. The Court's discretion to order a stay includes the authority to stay a matter pending the resolution of proceedings in the USPTO. *See Ethicon, Inc. v. Quigg*, 849 F.2d 1422, 1426–27 (Fed. Cir. 1988); *Gould v. Control Laser Corp.*, 705 F.2d 1340, 1341 (Fed. Cir. 1983).

### III. DISCUSSION

Sri Trang argues that staying this case pending the resolution of the TTAB actions will simplify the issues to be decided and reduce costs for the Court and the parties. The Court disagrees that the potential efficiencies referenced by Sri Trang warrant a stay.

**A. The Doctrine of Primary Jurisdiction is Inapplicable to this Trademark Infringement Case.**

Although not expressly stated, Sri Trang's stay motion is grounded in the doctrine of primary jurisdiction, a judge-made doctrine that "comes into play when a court and an administrative agency have concurrent jurisdiction over the same matter, and no statutory provision coordinates the work of the court and of the agency." *Mercury Motor Express, Inc. v. Brinke*, 475 F.2d 1086, 1091 (5th Cir. 1973). When applicable, the doctrine operates to postpone judicial consideration of a case to allow for an administrative determination of important questions by an agency with "special competence in the area." *Id.* at 1091–92.

The Court finds the Second Circuit's decision in *Goya Foods, Inc., v. Tropicana Products, Inc.*, 846 F.2d 848 (2d Cir. 1988), which considered the same question of whether to stay trademark infringement litigation pending the outcome of registration proceedings before the TTAB, to be instructive on the application of the

primary jurisdiction doctrine in this context. In *Goya*, the Second Circuit began by noting that the doctrine's scope is "relatively narrow," encompassing only lawsuits that raise "an issue, frequently the validity of a commercial rate or practice, committed by Congress in the first instance to an agency's determination, 'particularly when the issue involves technical questions of fact uniquely within the expertise and experience of an agency.'" *Id.* at 851 (quoting *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 304, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976)). The *Goya* court went on to observe that courts typically refuse to apply the doctrine when "the issue at stake is legal in nature and lies within the traditional realm of judicial competence." *Id.*

With these observations in place, and after examining the nature of TTAB registration proceedings and infringement actions, the *Goya* court reached two conclusions. First, the court concluded that the basic framework of federal trademark registration differs from other statutory regimes that implicate primary jurisdiction because the Lanham Act allows a litigant disappointed with a TTAB decision to file an action in federal district court that is "intended to be a trial *de novo*." *Id.* at 853; *see also B&B Hardware, Inc. v. Hargis Indus., Inc.*, 575 U.S. 138, 144, 135 S.Ct. 1293, 191 L.Ed.2d 222 (2015) (noting that, "[i]n district court, the parties can conduct additional discovery and the judge resolves registration *de novo*"). Such a scheme of review, the *Goya* court reasoned, "is thus some distance from the traditional arena of primary jurisdiction, 'a doctrine allocating the law-making power over certain aspects

of commercial relations.'" *Id*. (cleaned up) (quoting *United States v. W. Pac. R.R. Co.*, 352 U.S. 59, 65, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956)).

Second, the *Goya* court recognized that the nature of the TTAB's registration determination itself also weighed against "according excessive deference" to pending TTAB proceedings. *Id*. A TTAB registration decision, the court explained, does not involve "a regulated industry in which policy determinations are calculated and rates are fixed in order to calibrate carefully an economic actor's position within a market under agency control." *Id*. Likewise, a TTAB decision to permit, deny, or cancel registration also "is not the type of agency action that secures '[u]niformity and consistency in the regulation of business entrusted to a particular agency.'" *Id*. (quoting *Far East Conference v. United States*, 342 U.S. 570, 574, 72 S.Ct. 492, 494, 96 L.Ed. 576 (1952)). TTAB registration decisions also do not raise "technical questions of fact uniquely within the expertise and experience of an agency." *Id*. (internal quotation marks and citation omitted). To the contrary, the *Goya* court concluded, "[l]ikelihood of consumer confusion, which is relevant to the [TTAB's] registration determination," is a legal standard "with which courts have long-standing familiarity in resolving suits arising under both the Lanham Act and the common law of trademark infringement and unfair competition." *Id*.

Based on these conclusions, the Second Circuit developed the following guidance as to whether a court should stay its proceedings pending the outcome of a TTAB registration action. On the one hand, if the district court action "involves only the issue of whether a mark is entitled to registration," the doctrine of primary

5

jurisdiction "might well be applicable" because the benefits of awaiting the TTAB's decision would rarely be outweighed by the need for a prompt adjudication. *Id.* On the other hand, if the district court action concerns infringement, "the interest in prompt adjudication far outweighs the value of having the views of the [USPTO]." *Id.* at 853–54.

The Second Circuit's reasoning in *Goya* is sound and has been adopted by several courts across the country and in this circuit. *See, e.g.*, *Rhoades v. Avon Prods., Inc.*, 504 F.3d 1151, 1163–64 (9th Cir. 2007); *PHC, Inc. v. Pioneer Healthcare, Inc.*, 75 F.3d 75, 80 (1st Cir. 1996); *Officeware Corp. v. Dropbox, Inc.*, No. 3:11-CV-1448-L, 2012 WL 3262760, at *2–3 (N.D. Tex. Aug. 10, 2012); *see also Robin Singh Educ. Servs. v. Excel Test Prep. Inc.*, 274 F.App'x 399, 403 n.4 (5th Cir. 2008) (observing favorably that "several Circuit courts have noted that federal courts are not obligated to defer to PTO proceedings nor are PTO's findings on infringement binding on federal courts").

The instant case involves issues well beyond the trademark registration challenge raised in Sri Trang's cancellation actions before the TTAB, including questions of trademark infringement and dilution. Consistent with the well-reasoned rule described in *Goya*, the Court concludes that the interest in prompt adjudication of this case substantially outweighs the value of having the views of the TTAB on the question of registration of O&M Halyard's marks. The doctrine of primary jurisdiction therefore is inapplicable and Sri Trang's motion must fail.

### B. A Stay Would Unnecessarily Delay the Resolution of this Case.

Sri Trang's motion also fails because a stay would unnecessarily delay the resolution of this case without providing any meaningful narrowing of the issues before the Court. Because none of O&M Halyard's claims in this case solely involve the registrability of the trademarks at issue in the cancellation actions before the TTAB, the TTAB cannot resolve any of O&M Halyard's claims against Sri Trang. As O&M Halyard correctly notes, the TTAB will address only issues of trademark registration, as it cannot make any determinations on infringement, dilution, counterfeiting, or the other trademark-related claims pending in this case. Further, O&M Halyard has asserted claims, including its tortious-interference claim, that are not premised solely on its trademarks.

Because the TTAB lacks authority to resolve all the issues raised in this case, the parties will wind up back in this Court regardless of the TTAB outcome. Under similar circumstances, courts routinely reject requests to stay proceedings pending the outcome of parallel TTAB actions. *See ClipBandits, LLC v. Samora*, No. 4:20-CV-03054, 2020 WL 7388629, at *2 (S.D. Tex. Dec. 16, 2020) (collecting cases); *see also id.* ("Courts have consistently declined to defer to TTAB when, like here, additional claims are raised that cannot be resolved by the agency.").

Finally, Sri Trang has not asserted, much less demonstrated, that it will suffer any hardship or inequity if a stay is not granted. This stands in noted contrast to the "fair possibility" that a stay would harm O&M Halyard by preventing a prompt adjudication of its claims.

## IV. CONCLUSION

Sri Trang's requested stay serves neither judicial economy nor the interests of the parties and would impose potentially lengthy delays in the resolution of this case without good cause. For these reasons, Defendants' Motion to Stay, (Dkt. #10), is **DENIED**.

**So ORDERED and SIGNED this 18th day of January, 2023.**

SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE