# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| O&M Halyard, Inc., | ) | Case No.  4:22-cv-00622-SDJ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Sri Trang USA, Inc., Sri Trang | ) | |
| Gloves (Thailand) Public Company | ) | |
| Limited, and Sri Trang Agro-Industry | ) | |
| Public Company Limited and | ) | |
| Does 1 through 10 | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS

Defendants Sri Trang USA, Inc., Sri Trang Gloves (Thailand) Public Company Limited, and Sri Trang Agro-Industry Public Company Limited (collectively, "Sri Trang") file their Answer, Defenses, Counterclaims, and Jury Demand in response to Plaintiff O&M Halyard, Inc.'s Complaint, and state:

### Nature of Action

1.    Sri Trang denies the allegations in Paragraph 1 of the Complaint.

### The Parties

1.    Sri Trang lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 1 of the Complaint, and on that basis, denies them.

2.    Sri Trang admits the allegations in Paragraph 2 of the Complaint.

3.    Sri Trang denies the allegations in Paragraph 3 of the Complaint. Defendant Sri Trang Gloves (Thailand) Public Company Limited is a foreign public limited company with a

**DEFENDANTS' AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS**

principal place of business at No. 110 Kanjanavanit Road, Pahtong, Hat Yai, Songkhla, Thailand 90230.

4.      Sri Trang admits the allegations in Paragraph 4 of the Complaint.

5.      Sri Trang denies the allegations in Paragraph 5 of the Complaint.

6.      Sri Trang lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 6 of the Complaint, and on that basis, denies them.

### Jurisdiction and Venue

7.      Sri Trang alleges that the allegations of Paragraph 7 are conclusions of law to which no response is necessary. To the extent the allegations are factual in nature, Sri Trang denies them.

8.      Sri Trang alleges that the allegations of Paragraph 8 are conclusions of law to which no response is necessary. To the extent the allegations are factual in nature, Sri Trang denies them.

9.      Sri Trang denies the allegations in Paragraph 9 of the Complaint.

10.      Sri Trang denies the allegations in Paragraph 10 of the Complaint.

### O&M Halyard's Use and Ownership of its Marks

11.      Sri Trang lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11 of the Complaint, and on that basis, denies them.

12.      Sri Trang lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 of the Complaint, and on that basis, denies them.

13.      Sri Trang denies the allegations in Paragraph 13 of the Complaint.

14.      Sri Trang admits that the U.S. Patent and Trademark Office issued Trademark Reg. No. 2596539 on July 23, 2002. Sri Trang denies the remaining allegations in Paragraph 14 of the Complaint.

15.     Sri Trang admits that the U.S. Patent and Trademark Office issued Trademark Reg. No. 3099894 on June 6, 2006. Sri Trang denies the remaining allegations in Paragraph 15 of the Complaint.

16.     Sri Trang admits that the U.S. Patent and Trademark Office issued Supplemental Trademark Reg. No. 5613962 on November 20, 2018. Sri Trang denies the remaining allegations in Paragraph 16 of the Complaint.

17.      Sri Trang lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 17 of the Complaint, and on that basis, denies them.

18.     Sri Trang lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 18 of the Complaint, and on that basis, denies them.

19.     Sri Trang lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19 of the Complaint, and on that basis, denies them.

20.     Sri Trang lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20 of the Complaint, and on that basis, denies them.

21.     Sri Trang denies the allegations in Paragraph 21 of the Complaint.

22.     Sri Trang denies the allegations in Paragraph 22 of the Complaint.

23.     Sri Trang denies the allegations in Paragraph 23 of the Complaint. In addition, Halyard's statement that "the above-mentioned registrations remain in full force and effect and are *prima facie* proof of O&M Halyard's exclusive right to own and use . . . the color gray as used with gloves" is a misstatement of law, as supplemental registration is not *prima facie* evidence of the validity of the registered mark or of the registrant's exclusive right to use the mark in commerce.

## Misuse by Sri Trang of the O&M Halyard Trademarks

24.     Sri Trang denies the allegations in Paragraph 24 of the Complaint.

25.     Sri Trang admits that it has not acquired goods from O&M Halyard. Sri Trang denies the remaining allegations in Paragraph 25 of the Complaint.

26.     Sri Trang denies the allegations in Paragraph 26 of the Complaint.

27.     Sri Trang denies the allegations in Paragraph 27 of the Complaint.

28.     Sri Trang denies the allegations in Paragraph 28 of the Complaint.

29.     Sri Trang denies the allegations in Paragraph 29 of the Complaint.

30.     Sri Trang denies the allegations in Paragraph 30 of the Complaint.

31.     Sri Trang admits that O&M Halyard sent on July 12, 2022, a letter to Sri Trang. Sri Trang denies the remaining allegations in Paragraph 31 of the Complaint.

32.     Sri Trang denies the allegations in Paragraph 32 of the Complaint.

33.     Sri Trang denies the allegations in Paragraph 33 of the Complaint.

34.     Sri Trang denies the allegations in Paragraph 34 of the Complaint.

35.     Sri Trang denies the allegations in Paragraph 35 of the Complaint.

36.     Sri Trang denies the allegations in Paragraph 36 of the Complaint.

## COUNT I
### Trademark Infringement Under the United States Trademark Act (15 U.S.C. § 1114(1)) by Defendants

37.     Sri Trang incorporates by reference its responses to the preceding Paragraphs 1-36 of this Answer as if fully set forth herein.

38.     Sri Trang alleges that the allegations of Paragraph 38 are conclusions of law to which no response is necessary. To the extent the allegations are factual in nature, Sri Trang denies them.

39.     Sri Trang alleges that the allegations of Paragraph 39 are conclusions of law to which no response is necessary. To the extent the allegations are factual in nature, Sri Trang denies them.

40.     Sri Trang denies the allegations in Paragraph 40 of the Complaint.

## COUNT II
### Trademark Counterfeiting Under the United States Trademark Act (15 U.S.C. § 1114(1)) by Defendants

41.     Sri Trang incorporates by reference its responses to the preceding Paragraphs 1-40 of this Answer as if fully set forth herein.

42.     Sri Trang denies the allegations in Paragraph 42 of the Complaint.

43.     Sri Trang denies the allegations in Paragraph 43 of the Complaint.

44.     Sri Trang alleges that the allegations of Paragraph 44 are conclusions of law to which no response is necessary. To the extent the allegations are factual in nature, Sri Trang denies them.

## COUNT III
### False Designation of Origin, Passing Off, and Unfair Competition Under The United States Trademark Act (15 U.S.C. § 1125(a)) by Defendants

45.     Sri Trang incorporates by reference its responses to the preceding Paragraphs 1-44 of this Answer as if fully set forth herein.

46.     Sri Trang alleges that the allegations of Paragraph 46 are conclusions of law to which no response is necessary. To the extent the allegations are factual in nature, Sri Trang denies them.

47.     Sri Trang alleges that the allegations of Paragraph 47 are conclusions of law to which no response is necessary. To the extent the allegations are factual in nature, Sri Trang denies them.

48.     Sri Trang denies the allegations in Paragraph 48 of the Complaint.

## COUNT IV
### Trademark Dilution Under The United States Trademark Act
### (15 U.S.C. § 1125(c)) by Defendants

49.     Sri Trang incorporates by reference its responses to the preceding Paragraphs 1-48 of this Answer as if fully set forth herein.

50.     Sri Trang denies the allegations in Paragraph 50 of the Complaint.

51.     Sri Trang alleges that the allegations of Paragraph 51 are conclusions of law to which no response is necessary. To the extent the allegations are factual in nature, Sri Trang denies them.

52.     Sri Trang denies the allegations in Paragraph 52 of the Complaint.

## COUNT V
### Intentional Interference with Economic Advantage in Violation of
### Texas Common Law by Defendants

53.     Sri Trang incorporates by reference its responses to the preceding Paragraphs 1-52 of this Answer as if fully set forth herein.

54.     Sri Trang lacks knowledge or information sufficient to form a belief as to the truth of the allegation in Paragraph 54 of the Complaint that Halyard has for years entered into contracts with others and has reasonably expected to continue to enter into contracts licensing the O&M Halyard Trademarks to various entities for use with medical gloves, and on that basis, denies it. Sri Trang denies the remaining allegations in Paragraph 54 of the Complaint.

55.     Sri Trang denies the allegations in Paragraph 55 of the Complaint.

56.     Sri Trang denies the allegations in Paragraph 56 of the Complaint.

57.     Sri Trang denies the allegations in Paragraph 57 of the Complaint.

58.     Sri Trang denies the allegations in Paragraph 58 of the Complaint.

59.      Sri Trang alleges that the allegations of Paragraph 59 are conclusions of law to which no response is necessary. To the extent the allegations are factual in nature, Sri Trang denies them.

### COUNT VI
### Trademark Dilution Under The United States Trademark Act
### (15 U.S.C. § 1125(c))

60.      Sri Trang incorporates by reference its responses to the preceding Paragraphs 1-59 of this Answer as if fully set forth herein.

61.      Sri Trang denies the allegations in Paragraph 61 of the Complaint.

62.      Sri Trang denies the allegations in Paragraph 62 of the Complaint.

63.      Sri Trang denies the allegations in Paragraph 63 of the Complaint.

### COUNT VII
### Trademark Dilution Under Tex. Bus. & Comm. Code
### (Section 16.103) by Defendants

64.      Sri Trang incorporates by reference its responses to the preceding Paragraphs 1-63 of this Answer as if fully set forth herein.

65.      Sri Trang denies the allegations in Paragraph 65 of the Complaint.

66.      Sri Trang denies the allegations in Paragraph 66 of the Complaint.

67.      Sri Trang denies the allegations in Paragraph 67 of the Complaint.

68.      Sri Trang denies the allegations in Paragraph 68 of the Complaint.

69.      Sri Trang denies the allegations in Paragraph 69 of the Complaint.

### COUNT VIII
### Trademark Infringement in Violation of
### Texas Common Law by Defendants

70.      Sri Trang incorporates by reference its responses to the preceding Paragraphs 1-69 of this Answer as if fully set forth herein.

71.     Sri Trang denies the allegations in Paragraph 71 of the Complaint.

72.     Sri Trang denies the allegations in Paragraph 72 of the Complaint.

73.     Sri Trang denies the allegations in Paragraph 73 of the Complaint. Sri Trang alleges

that it the "O&M Halyard Trademarks" are not valid trademarks and any use of the colors in them

does not require Halyard's consent, permission, or license.

74.      Sri Trang denies the allegations in Paragraph 74 of the Complaint.

75.      Sri Trang denies the allegations in Paragraph 75 of the Complaint.

76.     Sri Trang denies the allegations in Paragraph 76 of the Complaint.

77.     Sri Trang denies the allegations in Paragraph 77 of the Complaint.


**COUNT IX**
**Unfair Competition in Violation of Texas Common Law by Defendants**

78.     Sri Trang incorporates by reference its responses to the preceding Paragraphs 1-77

of this Answer as if fully set forth herein.

79.     Sri Trang denies the allegations in Paragraph 79 of the Complaint.

80.     Sri Trang denies the allegations in Paragraph 80 of the Complaint.

81.     Sri Trang denies the allegations in Paragraph 81 of the Complaint.

82.     Sri Trang denies the allegations in Paragraph 82 of the Complaint.

**COUNT X**
**False Designation of Origin in Violation of Texas Common Law by Defendants**

83.     Sri Trang incorporates by reference its responses to the preceding Paragraphs 1-82

of this Answer as if fully set forth herein.

84.     Sri Trang denies the allegations in Paragraph 84 of the Complaint.

85.     Sri Trang denies the allegations in Paragraph 85 of the Complaint.

86.    Sri Trang denies the allegations in Paragraph 86 of the Complaint.

## COUNT XI
## Unjust Enrichment in Violation of Texas Common Law by Defendants

87.    Sri Trang incorporates by reference its responses to the preceding Paragraphs 1-86 of this Answer as if fully set forth herein.

88.    Sri Trang denies the allegations in Paragraph 88 of the Complaint.

89.    Sri Trang denies the allegations in Paragraph 89 of the Complaint.

90.    Sri Trang denies the allegations in Paragraph 90 of the Complaint.

## HALYARD'S PRAYER FOR RELIEF AND JURY DEMAND

91.    Sri Trang denies that Halyard is entitled to any of the relief requested in Paragraphs 1 – 14 of the Prayer for Relief section of the Complaint and requests dismissal of all Halyard's claims and entry of judgment in Sri Trang's favor and against Halyard as follows:

    a.    Denying all relief sought by Halyard in the Complaint;

    b.    Declaring the action to be exceptional and awarding Sri Trang its attorneys' fees pursuant to 15 U.S.C. § 1117 or other related law; and

    c.    Such other relief as the Court deems just and appropriate.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense – Failure To State A Claim

92.    Halyard's Complaint fails to state a claim against Sri Trang upon which relief can be granted.

### Second Affirmative Defense – Fraud

93.    Halyard committed fraud in the procurement and maintenance of U.S. Trademark Registration Nos. 2596539 and 3099894 for the color purple and in the procurement and maintenance of U.S. Trademark Supplemental Registration No. 5613962 for the color gray.

Specifically, during prosecution Halyard made material misstatements of fact relating to the scope, functionality, and alleged acquired distinctiveness of its purple color marks, and the scope and functionality of its gray color mark, with the intent to deceive the USPTO and but for which the USPTO would not have allowed registration. Similarly, Halyard made repeated, volitional misstatements of fact relating to the scope of its rights in purple and gray during maintenance of the registrations, again with the intent to deceive the USPTO and but for which registration would not have been maintained, at least as to all the goods identified in the registrations.

## Third Affirmative Defense – Unclean Hands

94.    Halyard, through attempted enforcement and misrepresentation of its alleged rights in the colors purple and gray, and the scope of its alleged rights, has committed unconscionable acts that have directly injured Sri Trang. As an example, Halyard in the Complaint misstated the law in claiming that Supplemental Registration No. 5613962 for the color gray is "prima facie proof of O&M Halyard's exclusive right to own and use . . . the color gray as used with gloves." (Dkt. 1 ¶ 23.) This misrepresentation of black letter trademark law was not a typographical error; on information and belief, Halyard has repeated this statement to customers of Sri Trang.

95.    In addition, through its surrogate's papers filed in the FDA and Halyard's attempt to claim trademark rights in the term "ultra violet", Halyard is attempting to disrupt Sri Trang's ability to continue its use of the descriptive term "violet blue" in connection with Sri Trang's sale of medical exam gloves in the United States. Halyard's acts are immediately related to the equitable relief Halyard seeks in this case.

## Fourth Affirmative Defense – Halyard's Registrations Are Invalid

96.    Halyard's registrations are invalid for at least the following reasons: (1) the purple color in Halyard's Registration Nos. 2596539 and 3099894 and the gray color in Halyard's

Supplemental Registration No. 5613962 are functional in the medical glove market, in both a utilitarian sense and under the competitive necessity doctrine; (2) the purple and gray colors are generic in the glove market; (3) the gray color lacks secondary meaning and does not and cannot act as a source identifier; (4) Halyard has never used more than two shades of purple and has never used more than two shades of gray on the goods identified in its registrations; and (5) Halyard's U.S. Trademark Registration Nos. 2596539 and 3099894 for the color purple and U.S. Trademark Supplemental Registration No. 5613962 for the color gray are invalid with respect to surgical gloves because they have (i) never used those colors in connection with surgical gloves or (ii) to the extent there was any use, Halyard abandoned any rights to those goods due to years of non-use.

### Fifth Affirmative Defense – Abandonment

97.     To the extent Halyard has used two shades of purple in connection with the goods identified in Registration Nos. 2596539 and 3099894 and two shades of gray in connection with the goods identified in Supplemental Registration No. 5613962, such use has been limited in each case to two shades. As a result, Halyard has never engaged in the bona fide use in commerce of all the other shades of purple and gray, and has no intent to use, much less resume use, of any of the other shades of purple and gray, in connection with the identified goods. For this reason, Halyard has abandoned its rights in purple and gray, with the exception of the shades of purple and gray it has actually used in U.S. commerce, as to all the identified goods.

### Sixth Affirmative Defense – Non-Infringement

98.     Sri Trang does not infringe and has not infringed the marks in Halyard's Registration Nos. 2596539 and 3099894 for the color purple or the mark in Halyard's

Supplemental Registration No. 5613962 for the color gray and is not liable for infringement, willful or otherwise.

### Seventh Affirmative Defense – No Willful Infringement

99.    Halyard is not entitled to enhanced damages for at least the reason that Halyard has not shown and cannot show that Sri Trang intentionally or willfully infringed any valid trademark held by Halyard.

### Reservation Of Defenses

100.    Sri Trang reserves all affirmative defenses available under Rule 8(c) and Rule 12 of the Federal Rules of Civil Procedure, and any other defenses, at law or in equity, that may be available now or may become available based on discovery or any other factual investigation in this case.

### COUNTERCLAIMS

101.    Defendant Sri Trang Gloves (Thailand) Public Company Limited asserts the following Counterclaims against Plaintiff and Counter Defendant O&M Halyard, Inc., and states:

### The Parties

102.    Defendant and Counter Plaintiff Sri Trang Gloves (Thailand) Public Company Limited is a foreign public limited company with a principal place of business at No. 110 Kanjanavanit Road, Pahtong, Hat Yai, Songkhla, Thailand 90230.

### Jurisdiction And Venue

103.    Halyard's Complaint pleads that this Court has subject matter jurisdiction based on 28 U.S.C. §§ 1331, 1332, 1338(a) and (b), and 15 U.S.C. §§ 1121 and 1125(a) and (c), and that the Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

104.    Halyard's Complaint pleads that this Court has personal jurisdiction over Sri Trang under Tex. Civ. Prac. & Rem. Code § 17.042.

105.    Halyard's Complaint pleads that venue is proper under 28 U.S.C. § 1391(b) and (c).

106.    Halyard, by filing its Complaint, has submitted itself to the personal jurisdiction of this Court.

107.    This Court has subject matter jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202.

## FACTS

### Sri Trang's Glove-Making Business

108.    Sri Trang Gloves (Thailand) Public Company Limited ("Sri Trang") is one of the largest glove manufacturers in the world. It distributes and sells gloves in over 170 countries, including the United States.

109.    Sri Trang opened its first factory in 1989, located in Thailand. By 1993, Sri Trang's glove production surpassed one billion units. That same year, Sri Trang began manufacturing powder-free Latex medical examination gloves.

110.    In 1999, Sri Trang began manufacturing Nitrile gloves. Because Nitrile gloves are made from synthetic rubber, they provide an excellent alternative to Latex medical examination gloves, which are made from natural rubber and are known to cause allergic reactions in some patients. Latex and Nitrile gloves each have distinct properties that are favored by healthcare professionals, but Nitrile gloves have gained in popularity.

111.    Sri Trang manufactures and sells gloves in the United States under its own brands/trademarks and under third party labels (OEM).

112.    Sri Trang sells its most popular Nitrile gloves in the United States under the descriptive term "Violet Blue". Attached herein as Exhibit 1 is a screen shot from Sri Trang's website at [https://www.sritranggloves.com/en/our-business/products/nitrile-powder-free-examination-gloves](https://www.sritranggloves.com/en/our-business/products/nitrile-powder-free-examination-gloves), which shows the "violet blue" Nitrile glove and its properties. In the 510k papers Sri Trang submitted to the FDA, Sri Trang described these gloves in the Device Description Section as "Color – Violet Blue – Color additive." Sri Trang has promoted and sold violet blue gloves in the United States since at least as early as 2019.

### The History Of Halyard's Purple And Gray Color Mark Registrations

113.    Safeskin Corporation filed the application underlying U.S. Trademark Registration No. 2596539 (the "PURPLE '539 Registration") on February 12, 1999, on an intent-to-use basis.

114.    According to the Description in the PURPLE '539 Registration, "the mark consists of the color purple as applied to the goods." There is no limitation in the PURPLE '539 Registration to a specific shade or range of shades, by Pantone Number or otherwise, of the color purple.

115.    On July 28, 2000, Halyard's predecessor responded to the examining attorney's refusal of the underlying application, arguing that the "COLOR PURPLE", without acknowledging any limitation to specific shades of purple, had acquired distinctiveness under Section 2(f) of the Trademark Act. (Ex. 2.) The mark subsequently registered under Section 2(f).

116.    Halyard now purports to own exclusive trademark rights to all shades of purple when used in connection with medical gloves and the other goods identified in the PURPLE '539 Registration. (Dkt. 1 ¶ 13.)

117.    Kimberly-Clark Worldwide, Inc., filed the application underlying U.S. Trademark Registration No. 3099894 (the "PURPLE '894 Registration") on April 24, 2003, on a Section 1(a) basis.

118.    According to the Description in the PURPLE '894 Registration, "[t]he mark consists of the Color Purple as applied to the goods." There is no limitation in the PURPLE '894 Registration to a specific shade or range of shades, by Pantone Number or otherwise, of the color purple.

119.    On June 7, 2004, in response to the examining attorney's refusal of the application underlying the PURPLE '894 Registration on the grounds that the single color mark was not inherently distinctive and that the color purple was merely a grade designation, Halyard's predecessor in interest responded that it "chose the color purple because it was an unusual and fanciful color" and, without acknowledging any limitation to a specific shade of purple, asserted that the mark had "acquired distinctiveness and therefore is eligible for registration on the Principal Register under Section 2(f) of the Trademark Act." (Ex. 3.) The mark subsequently registered under Section 2(f).

120.    Halyard now purports to own exclusive trademark rights to all shades of purple when used in connection with medical gloves and the other goods identified in the PURPLE '894 Registration. (Dkt. 1 ¶ 13.)

121.    According to records found on the USPTO website, Kimberly-Clark Corporation, by virtue of a merger with Safeskin Corporation, became the owner on December 31, 2004, of the PURPLE '539 Registration. (Ex. 4.) Kimberly-Clark Corporation assigned the PURPLE '539 Registration to Kimberly-Clark Worldwide, Inc., on the same day. (*Id.*)

122.    Through the same transaction, the application underlying the PURPLE '894 Registration was assigned to Kimberly-Clark Worldwide, Inc. (*Id*.)

123.    Kimberly-Clark Worldwide, Inc., assigned the PURPLE '539 Registration and the PURPLE '894 Registration to Avent, Inc., on October 30, 2014. (Ex. 5.)

124.    On April 30, 2018, Avent, Inc., assigned the PURPLE '539 Registration and the PURPLE '894 Registration to Halyard. (Ex. 6.)

125.    Halyard filed the application underlying U.S. Trademark Registration No. 5613962 (the "GRAY '962 Supplemental Registration") on August 13, 2018, seeking registration on the Principal Register.

126.    The Description states that "[t]he mark consists of a shade of gray."

127.    On September 18, 2018, the examining attorney refused the application underlying the GRAY '962 Supplemental Registration. (Ex. 7.)

128.    The refusal stated that "the applied-for color mark, consisting of one color used on some or all of the surfaces of a product, is not inherently distinctive."

129.    The refusal also stated that the "applied-for mark fails to function as a trademark because it consists solely of a color used on the goods."

130.    In addition, the refusal stated that "a claim of acquired distinctiveness based solely on 'five years' use will be insufficient because the burden of proving that a color mark has acquired distinctiveness is substantial . . . . Therefore, applicant must provide additional evidence that the applied-for mark has acquired distinctiveness for the identified goods." The refusal stated that "applicant may respond to the refusal by submitting evidence and arguments in support of registration."

131.    On September 26, 2018, Halyard responded to the refusal, but did not provide any evidence that the gray color mark had acquired distinctiveness. (Ex. 8.)

132.    Instead, Halyard amended the application to seek registration on the Supplemental Register.

133.    The gray color application matured to registration on the Supplemental Register – the GRAY '962 Supplemental Registration – on November 20, 2018.

134.    Halyard has never provided the USPTO with any evidence that the gray color mark in the GRAY '962 Supplemental Registration has acquired secondary meaning.

**Halyard's Pattern Of Seeking Registrations
For Color Marks And Corresponding Word Marks**

135.    In addition to purporting to own exclusive trademark rights in all shades of purple and all shades of gray for medical gloves, Halyard has sought numerous trademark registrations for other color marks[1] and for color-related word marks corresponding to Halyard's color marks.

136.    For example, Halyard applied on July 27, 2018, for the word mark "GRAY" in Class 10 for "Medical examination gloves; Nitrile gloves for medical use; Protective gloves for medical use."

137.    Halyard sought registration for the GRAY word mark, U.S. Trademark Application No. 88055741, on the Principal Register. On September 4, 2018, however, the examining attorney refused registration "because the applied-for mark GRAY in standard characters merely describes a feature of applicant's goods . . . , namely the color of the goods." On March 4, 2019, Halyard responded and sought registration of the GRAY word mark on the Supplemental Register. The

---

[1] Color marks, such as those claimed as trademarks by Halyard, are referred to both as trademarks and trade dress in the Supreme Court, Fifth Circuit, and federal district courts in Texas. Accordingly, the colors in which Halyard claims trademark rights and ownership, when used in connection with gloves including exam gloves and surgical gloves, are treated herein under general trademark principles and under precedents applicable specifically to trade dress.

**DEFENDANTS' AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS – Page 17**

application matured to registration as U.S. Trademark Supplemental Registration No. 5766072 (the "GRAY Word Mark Supplemental Registration").

138.    Halyard, through the affiliated entity Avent, Inc., applied on February 2, 2017, for the word mark "LAVENDER" in Class 10 for "Medical examination gloves; Protective gloves for medical use; Nitrile gloves for medical use."

139.    Halyard sought registration for the LAVENDER word mark, U.S. Trademark Application No. 87322476, on the Principal Register. On March 7, 2017, however, the examining attorney refused registration "because the applied-for mark merely describes a feature or characteristic of applicant's goods." The examiner cited the Merriam-Webster online dictionary for evidence "that the word 'lavender' describes a pale purple color." On September 7, 2017, Halyard responded and sought registration of the LAVENDER word mark on the Supplemental Register. The application matured to registration as U.S. Trademark Supplemental Registration No. 5342948 (the "LAVENDER Word Mark Supplemental Registration"). (Ex. 9.)

140.    Halyard then sought registration for the LAVENDER color mark, U.S. Trademark Application No. 90333376, on the Principal Register under Section 2(f) of the Trademark Act for Class 10 goods, namely, ""Medical examination gloves; Nitrile gloves for medical use; Protective gloves for medical use." But on September 16, 2021, the examining attorney refused registration of the LAVENDER color mark on the ground that "Lavender" is generic. The examiner determined that "medical gloves" defined the genus and, citing use of the color by multiple third parties, concluded that "the color lavender used on medical gloves is understood by the relevant public primarily as a category or type of trade dress for that genus of goods and thus the relevant public would understand this designation to refer primarily to that genus of goods due to its common and widespread use." (Ex. 10.)

**DEFENDANTS' AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS** – Page 18

141.    Rather than contesting the examiner's genericness refusal, Halyard expressly abandoned the application on March 9, 2022.

142.    Then on April 12, 2022, Halyard tried again to obtain registration of the LAVENDER color mark for the same goods, but this time seeking registration on the Supplemental Register. (Ex. 11.) This application, U.S. Trademark Application No. 97359256 (the "LAVENDER Color Mark '256 Application"), is early in the process of prosecution and awaits review by the examining attorney. Halyard claims that the mark in the LAVENDER Color Mark '256 Application was first used in commerce "[a]t least as early as 05/02/2011." (*Id.*)

143.    Halyard holds other color and color-based word mark registrations as well, including but not limited to: the word mark PURPLE, U.S. Trademark Registration No. 5506127, which is on the Principal Register on a Section 2(f) basis for the Class 10 goods "Gloves for medical use; Nitrile gloves for medical use" (Ex. 12); the word mark LAVENDER NITRILE, U.S. Trademark Registration No. 5342951, which is on the Supplemental Register for the Class 10 goods "Medical examination gloves; Nitrile gloves for medical use; Protective gloves for medical use" (Ex. 13); and the word mark BLACK-FIRE, U.S. Trademark Registration No. 5129984, which is on the Principal Register for the Class 10 goods "Nitrile gloves for medical use" (Ex. 14).

144.    Halyard also holds pending applications for color and color-based word marks, including but not limited to: the color mark ORANGE and BLACK, U.S. Trademark Application No. 90661239, seeking registration on the Supplemental Register for the Class 10 goods "Gloves for medical purposes; Medical examination gloves; Nitrile gloves for medical use; Protective gloves for medical use." The description asserts that these gloves, which are purely orange on the outside and black on the inside, are reversible (Ex. 15); the word mark ULTRA VIOLET, U.S. Trademark Application No. 97523991, seeking registration on the Principal Register for Class 9

goods "Gloves for laboratory purposes; Protective gloves for industrial use" and Class 10 goods "Gloves for medical purposes; Gloves for medical use; Medical gloves; Medical examination gloves; Protective gloves for medical use" (Ex. 16); and the word mark STEEL BLUE, U.S. Trademark Application No. 90874359, filed on an intent-to-use basis seeking registration on the Principal Register for Class 10 goods "Nitrile gloves for medical use" (Ex. 17).

145.    Halyard also filed two applications for word marks incorporating the term "pink", U.S. Trademark Application Nos. 88599397 for PINK UNDERGUARD ZERO and 87910239 for PINK UNDERGUARD, for Class 10 goods "Nitrile gloves for medical use; Protective gloves for medical use", both of which Halyard expressly abandoned.

146.    Through its affiliate Avent, Inc., Halyard filed on November 21, 2016, an application seeking registration on the Supplemental Register, U.S. Trademark Application No. 87243629, for the color green in connection with Class 10 goods, namely, "Gloves for medical use; Protective gloves for medical use." (Ex. 18.) Unlike Halyard's applications above for color marks and color-related word marks, this application specified a specific Pantone number – 7488U. (*Id.*) The application matured to registration on August 29, 2017, Registration No. 5278439.

### **Halyard's Attempt to Monopolize All Colors Used in the Medical Industry**

147.    Indeed, as the foregoing paragraphs demonstrate, Halyard seeks to claim intellectual property rights in nearly all of the colors the medical industry uses for examination and surgical gloves.

148.    Halyard claims intellectual property rights in the color gray, including that it owns a registered trademark or trademark for it, for gloves for medical use.

149.    Halyard claims intellectual property rights in the color green, including that it owns a registered trademark or trademark for it, for gloves for medical use.

150.    Halyard claims intellectual property rights in the color lavender, including that it owns a registered trademark or trademark for it, for gloves for medical use.

151.    Halyard claims intellectual property rights in the color purple, including that it owns a registered trademark or trademark for it, for gloves for medical use.

152.    Halyard claims intellectual property rights in the color ultra violet, including that it owns a registered trademark or trademark for it, for gloves for medical use.

153.    Halyard claims intellectual property rights in the color blue, including that it owns a registered trademark or trademark for it, for gloves for medical use.

154.    Halyard claims intellectual property rights in the color pink, including that it owns a registered trademark or trademark for it, for gloves for medical use.

155.    Halyard claims intellectual property rights in the colors black and orange, including that it owns a registered trademark or trademark for it, for gloves for medical use.

156.    Halyard claims intellectual property rights in the color orange, including that it owns a registered trademark or trademark for it, for gloves for medical use.

157.    Halyard claims intellectual property rights in the color black, including that it owns a registered trademark or trademark for it, for gloves for medical use.

158.    Essentially, Halyard seeks to prevent competitors from selling any personal protective equipment, specifically gloves, in colors that end users in the medical industry customarily use and need for a variety of reasons.  By doing so, Halyard attempts to limit the colors available to its competitors, most of which would be undesirable to the medical industry.

### Halyard's Attempts to Assert Broader Rights than it is Entitled.

159.    Halyard has attempted to enforce trademark rights in purple and gray surgical gloves. But Halyard has not used the colors purple and gray on surgical gloves.

160.    Specifically, Halyard, and its predecessors, have not used purple in connection with surgical gloves since at least the early 2000s through 2019, and there is no evidence of any plans to resume use.

161.    Halyard, and its predecessors, have not sold gray surgical gloves since at least the early 2000s through 2019, and there is no evidence of any plans to resume use.

162.    Halyard's own witnesses have corroborated its non-use of purple and gray surgical gloves.

163.    Notwithstanding the above, Halyard recently filed maintenance documents to the contrary.

## COUNTERCLAIM – COUNT I
### Declaratory Judgment Of Non-Infringement

164.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101-163 of its Counterclaims as if fully set forth herein.

165.    The color marks in the PURPLE '539 Registration, PURPLE '894 Registration, and GRAY '962 Supplemental Registration (collectively, the "Halyard Color Marks" and "Halyard Color Registrations") are not legally protectable trademarks.

166.    The purchasers of Halyard's goods and Sri Trang's competing goods are sophisticated and exercise a high degree of care purchasing medical gloves.

167.    The Halyard Color Marks and the colors used by Sri Trang in connection with medical gloves are dissimilar.

168.    There is no actual confusion in the marketplace.

169.    The Halyard Color Marks are secondary marks and are used in conjunction with Halyard's, or its licensees' and affiliates', house marks, as can be seen in the examples below:







170.    As a further example, Kimtech, a subsidiary of Kimberly-Clark and licensee of Halyard, lists Purple Nitrile as a "sub brand" underneath the main brand, "Kimtech". (Ex. 19.)

171.    Sri Trang did not have and has no intent to confuse consumers, to pass off its goods as those of Halyard, or to derive any benefit from the reputation of Halyard.

172.    To the extent the Halyard Color Marks are protectable, they are very weak.

173.    Accordingly, Sri Trang is entitled to a declaratory judgment that it does not infringe the Halyard Color Marks.

**COUNTERCLAIM – COUNT II**
**Declaratory Judgment That Halyard's Color Marks Are Not Famous And Therefore Halyard's Federal And State Dilution Claims Must Fail**

174.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101-173 of its Counterclaims as if fully set forth herein.

175.    Under 15 U.S.C. Section 1125(c)(2)(A), "a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner."

176.    The Texas state dilution standard is substantially consistent with the federal dilution standard, with a difference in geographic scope: "A mark is famous under Texas law if it is widely recognized by the public throughout th[e] state or in a geographic area in th[e] state as a designation of source of the goods or services of the mark's owner." *Tex. Bus. & Com. Code Ann. § 16.103(b)*.

177.    Halyard's Complaint alleges that its "gloves have gained recognition and reputation within the medical industry" (¶ 11), that its gloves "are widely and favorably known by medical industry customers in Texas, in the United States, and elsewhere" (¶ 21), that its marks "have been prominently placed in the minds of medical industry customers" (*id.*), that its marks "possess a strong secondary meaning among medical industry consumers" (*id.*), this its marks "symbolize the enormous goodwill" of Halyard's "business within the medical industry in Texas and nationwide" (*id.*), that its marks have been "well-known in the medical industry" in Texas, in the United States nationwide, and elsewhere" (¶ 22), and that its marks "are well-known to the medical industry" (¶ 65).

178.    Not once in the Complaint does Halyard allege that the Halyard Color Marks are widely recognized by the general consuming public of the United States or of Texas.

179.    Instead, Halyard alleges only that the Halyard Color Marks are well known in the medical industry.

180.    These allegations show the implausibility that the Halyard Color Marks on medical gloves are famous or could ever be famous, either under federal law or Texas law.

181.    Because fame is a prerequisite for a finding of trademark dilution under federal law and under Texas law, and the Halyard Color Marks are not famous, Sri Trang is entitled to a declaratory judgment that it has not diluted and cannot dilute, by blurring or by tarnishment, any of the Halyard Color Marks.

## COUNTERCLAIM – COUNT III
### Cancellation Of The PURPLE '539 Registration And The PURPLE '894 Registration Because The PURPLE Color Marks Are Generic

182.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101-182 of its Counterclaims as if fully set forth herein.

183.    Under 15 U.S.C. Section 1119, a district court may, in any action involving a registered mark, order the cancellation of registrations.

184.    Under 15 U.S.C. Section 1064, a party may file a petition to cancel the registration of a mark if the party believes it is being damaged or will be damaged by continued registration of the mark.

185.    Sri Trang has standing to seek cancellation of The PURPLE '539 Registration and the PURPLE '894 Registration because it has a real interest in cancelling them and a reasonable belief that the registrations are causing damage to Sri Trang.

186.    Specifically, Sri Trang's real interest in cancellation springs from the cease and desist letter sent by Halyard and the present lawsuit, which asserts both of the PURPLE registrations. Moreover, Sri Trang is entitled to use at least most, if not all, shades of the color

purple on medical and other gloves and has a competitive need to use such colors. Sri Trang's inability to use the color purple on medical and other gloves, especially in light of the extraordinarily broad, undefined scope of "purple" over which Halyard purports to have exclusive rights, is and will continue to cause damage to Sri Trang.

187.    The genus of the Class 9 goods in the PURPLE '539 Registration is protective gloves for industrial use.

188.    The genus of the Class 10 goods in the PURPLE '539 Registration is medical gloves.

189.    The genus of the Class 21 goods in the PURPLE '894 Registration is disposable nitrile gloves.

190.    The color purple on protective, medical, and disposable nitrile gloves has been an is so common in the relevant industries that it could not and can no longer serve as an indicator of source.

191.    Numerous examples exist in the marketplace for protective, medical, and disposable nitrile gloves in which third parties are using shades of purple on gloves they sell. In none of these instances is the color purple acting as a source identifier.

192.    Third parties, including entities in relevant media, use the color purple as an indicator of the type or weight of a glove and also to indicate the specific use of a glove.

193.    Halyard has used and continues to use the color purple in a generic sense. And its licensees do the same. For example, Kimberly-Clark states the following: "These purple nitrile gloves guard against incidental splashes", and under the specification for "color" the designation is "purple". (Ex. 20.)

194.    Accordingly, because Halyard's PURPLE Color Marks are generic and do not indicate source, the Court should order the USPTO to cancel the PURPLE '539 Registration and the PURPLE '894 Registration.

**COUNTERCLAIM – COUNT IV**
**Cancellation Of The GRAY '962 Supplemental Registration**
**Because The GRAY Color Mark Is Generic**

195.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101-194 of its Counterclaims as if fully set forth herein.

196.    Sri Trang has standing to seek cancellation of the GRAY '962 Supplemental Registration because it has a real interest in cancelling it and a reasonable belief that the registration is causing damage to Sri Trang.

197.    Specifically, Sri Trang's real interest in cancellation springs from the cease and desist letter sent by Halyard and the present lawsuit, which asserts the GRAY '962 Supplemental Registration. Moreover, Sri Trang is entitled to use at least most, if not all, shades of the color gray on medical and other gloves and has a competitive need to use such colors. Sri Trang's inability to use the color gray on medical and other gloves, especially in light of the extraordinarily broad, undefined scope of "gray" over which Halyard purports to have exclusive rights, is and will continue to cause damage to Sri Trang.

198.    The genus of the Class 10 goods in the GRAY '962 Supplemental Registration is medical gloves.

199.    The color gray on medical gloves has been and is so common in the medical field that the color gray cannot serve and has never served as an indicator of source.

200.    Many examples exist in the marketplace for medical gloves in which third parties are using shades of gray on medical gloves. In each instance, the color gray is not acting as a source identifier.

201.    Moreover, third parties and entities in the relevant media refer to the color gray as an indicator of the type or weight of a glove and also of the specific use for which the glove is intended.

202.    Kimberly-Clark, for example, refers on an Amazon.com listing to the STERLING brand gray color gloves it licenses from Halyard this way: "The thin mil gray gloves (3.5 mil) are ambidextrous, powder-free, have an AQL of 1.5, and feature beaded cuffs and textured fingertips. They are cleared for use in chemotherapy . . . . Plus, these gray nitrile gloves are environmentally responsible and may be recycled through the Kimberly-Clark RightCycle Program." (Ex. 21.) And, the color listed in the Specifications is "grey". (*Id.*) Halyard's purported color gray mark is generic for gray medical exam gloves.

203.    The primary significance of the color gray on Halyard's and its licensees' gloves is merely that the gloves are gray.

204.    Accordingly, because Halyard's gray color mark is generic and does not indicate source, the Court should order the USPTO to cancel the GRAY '962 Supplemental Registration.

### COUNTERCLAIM – COUNT V
**Partial Cancellation Of The PURPLE '539 Registration and PURPLE '894 Registration Because The Marks Have Been Partially Abandoned Through Non-Use For Over Three Years And Halyard Has No Intent To Resume Use**

205.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101-204 of its Counterclaims as if fully set forth herein.

206.    February 12, 1999, is the date of filing of the application underlying the PURPLE '539 Registration.

207. The mark in the PURPLE '539 Registration "consists of the color purple" without limitation to specific shades of purple.

208. Halyard purports to own exclusive trademark rights to all shades of the color purple when used in connection with the goods identified in the PURPLE '539 Registration.

209. April 24, 2003, is the date of filing of the application underlying the PURPLE '894 Registration.

210. The mark in the PURPLE '894 Registration "consists of the color purple" without limitation to specific shades of purple.

211. Halyard purports to own exclusive trademark rights to all shades of the color purple when used in connection with the goods identified in the PURPLE '894 Registration.

212. On information and belief, since the respective registration dates of the PURPLE '539 Registration and the PURPLE '894 Registration Halyard has used only two shades of purple in connection with the identified goods.

213. Specifically, on information and belief, Halyard has used one shade of purple represented by or substantially similar to Pantone 2075 C ("Warm Purple") and a second shade represented by or substantially similar to Pantone 2655 C ("Lavender Purple").

214. The medical exam gloves page on Halyard's website (Ex. 22) confirms that it sells only two shades of purple, those it refers to as "purple" and "lavender".

215. Review of the Internet and of Halyard's maintenance filings in the USPTO shows that its use of purple in connection with the identified goods is confined to two shades of purple.

216. In the Fifth Circuit, a color mark is distinctive and protectable only if the mark has acquired secondary meaning.

217.    Halyard's PURPLE '539 Registration and PURPLE '894 Registration were both obtained under Section 2(f) of the Trademark Act, which requires the applicant to show secondary meaning. In each instance, Halyard's predecessor supplied evidence of secondary meaning only as to the single shade of purple herein referred to as "Warm Purple".

218.    As a result, Halyard cannot have obtained secondary meaning as an identifier of source for shades of purple other than those within a reasonable range of Warm Purple.

219.    Halyard has never used and has no intent to use other shades of purple, except Lavender Purple, discussed below. Accordingly, it has abandoned the marks in the PURPLE '539 Registration and PURPLE '894 Registration as to all identified goods, with the exception that it has not abandoned the marks restricted to Warm Purple, the only shade for it has attempted to show that secondary meaning has been acquired.

220.    Halyard, through its 2022 application for the color lavender ("Lavender Purple") in connection with medical gloves – the LAVENDER Color Mark '256 Application referenced above – confirms that its rights to the color purple do not extend to all shades of purple.

221.    Dictionaries and other media sources widely recognize lavender as a shade of purple. (Exs. 23-25.)

222.    Because the LAVENDER Color Mark '256 Application claims a first use in commerce date of "at least as early as 05/02/2011" (Ex. 26), a strong inference can be drawn that Halyard did not use lavender in connection with any of the goods identified in either the PURPLE '539 Registration or the PURPLE '894 Registration at the time it claimed acquired distinctiveness for the color purple.

223.    Accordingly, Halyard has abandoned through non-use for well over three years, with intent not to resume use, the color purple in connection with all the goods identified in the PURPLE '539 Registration or the PURPLE '894 Registration, with the exception of Warm Purple.

224.    For this reason, the Court should order the USPTO to restrict by specific Pantone number the descriptions of the PURPLE '539 Registration and the PURPLE '894 Registration to the specific shade of purple referred to herein as Warm Purple.

## COUNTERCLAIM – COUNT VI
### Partial Cancellation Of The GRAY '962 Supplemental Registration Because The Marks Have Been Partially Abandoned Through Non-Use For Over Three Years And Halyard Has No Intent To Resume Use

225.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101- 224 of its Counterclaims as if fully set forth herein.

226.    August 13, 2018, is the date of filing of the application underlying the GRAY '962 Supplemental Registration.

227.    According to Halyard, the mark in the GRAY '962 Supplemental Registration "consists of the color gray applied to gloves" without limitation to specific shades of gray.

228.    Halyard purports to own exclusive trademark rights to all shades of the color gray when used in connection with the goods identified in the GRAY '962 Supplemental Registration.

229.    On information and belief, however, Registrant has used only two shades of gray in connection with the goods identified in the GRAY '962 Registration.

230.    On information and belief, Registrant has used at most only two shades of gray, one represented by or substantially similar to Pantone Cool Gray 6 C ("Pantone 6 C"), which is a darker gray, and the other represented by or substantially similar to Pantone Cool Gray 4 C ("Pantone 4 C"), a lighter gray.

231.    The medical exam gloves page on Halyard's website (Ex. 22) confirms that it sells only two shades of gray, those it refers to with its STERLING trademark.

232.    Review of various Internet sources reveals that gray-colored gloves sold by O&M Halyard, Inc., exist only in the colors construed herein as Pantone 6 C and Pantone 4 C.

233.    On information and belief, Halyard has never used any other shade of gray in connection with any of the goods identified in the GRAY '962 Supplemental Registration for at least three years prior to the date of this filing, and has no intent to resume use of any other shade of gray in connection with any of the goods identified in the GRAY '962 Supplemental Registration.

234.    Accordingly, Halyard has abandoned through non-use for well over three years, with intent not to resume use, the color gray in connection with all the goods identified in the GRAY '962 Supplemental Registration except as to Pantone 6 C and Pantone 4 C, the two shades of gray it has used in connection with the identified goods.

235.    For this reason, the Court should order the USPTO to restrict by specific Pantone numbers the description of the GRAY '962 Supplemental Registration to the two specific shades of gray referenced herein.

## COUNTERCLAIM – COUNT VII
### Cancellation Of The PURPLE '539 Registration and PURPLE '894 Registration Because The Purple Color Marks Are Functional Under The Traditional Test And the Competitive Necessity Test

236.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101- 235 of its Counterclaims as if fully set forth herein.

237.    In the Fifth Circuit, a mark is functional under the traditional test for functionality if it is essential to the use or purpose of the article or if it affects the cost or quality of the article.

238.    The traditional test relates to whether the mark provides utilitarian benefits, and functionality may be established even if the utilitarian benefits are offered in some, but not all, applications.

239.    Halyard's materials, those of its licensees, and third-party references show that the color purple has utilitarian benefits in several applications.

240.    U.S. Patent Nos. 6,370,694 and 6,175,962, both entitled "Surgical Glove", show that the color purple functions to show breaches in a surgical glove because the patented material turns purple, which can easily be seen, when exposed to blood or other bodily fluids. (Exs. 27-28.)

241.    The color purple has been used by Halyard's predecessor to distinguish between Latex and Nitrile gloves. For example, Safeskin Corporation ran in the June 1999 issue of Jems magazine an advertisement stating that "Purple Nitrile gloves introduced by Safeskin are latex- and powder-free and available in standard and longer lengths. These synthetic gloves feature comfortable, textured fingertips that enhance wet and dry grip. Their unique purple color differentiates them from latex and other synthetic gloves." (Ex. 29.)

242.    In another advertisement, Safeskin stated that the "purple color makes it easy to quickly identify Purple Nitrile as a latex alternative." (Ex. 30.)

243.    Currently on Halyard's website, the listing for Halyard's pink exam gloves states that the pink color on an underglove provides "visible breach protection" in double-gloving situations when wearing a contrasting purple glove as an outer layer. (Ex. 31.)

244.    The website at glovenation.com features Glove Nation's Grape Grip nitrile gloves, where under the "Color Coding" heading its states: "Featuring a vibrant purple color, these gloves are ideal for use with color coding to help identify when gloves have become torn and to provide an extra level of protection against harmful chemicals, substances." (Ex. 32.)

245.    And, the "Color Coding Gloves" section found on the website at glovenation.com explains the "increasingly popular practice among healthcare professionals to ensure patient and user safety." (Ex. 33.) Describing the different ways color coding can be implemented, the article states that color coding can distinguish between vinyl, nitrile, and latex gloves, or can be helpful in double-gloving settings. (*Id.*) It then provides an example: "With nitrile gloves, color coding may look something like this: purple gloves are suitable for use with chemotherapy, black or blue gloves for medical examinations or other procedures." (*Id.*)

246.    The website at sunlinesupply.com states that "different colored gloves often have to do with a shift toward a more personalized patient experience. For many doctors, nurses and other healthcare professionals, patient perception has become an important concern. Some healthcare workers are moving away from white or blue gloves to royal blue or purple-colored latex or nitrile gloves to help convey a warmer feel and more positive experience for their patients." (Ex. 34.)

247.    On the website at harmonycr.com is an article entitled "What Do The Color Of Gloves Mean?" (Ex. 35.) Under the heading "Purple Disposable Gloves", it states that some healthcare practitioners "find that blue is too associated with cold hospital exam tables and find patients are more receptive to purple and pink gloves." (*Id.*) Under "Double Gloving and Glove Colors" the article explains that by "wearing a white glove as a base layer, and then putting a second purple exam glove on, the doctor is quickly able to see a tear or abrasion. The white glove will show through the purple layer upon tearing." (*Id.*) The article later states that "Blue #2 is used in medical exam gloves and has reactions in a small portion of the population. To combat this, purple exam gloves are useful". (*Id.*)

248.    Infection prevention is very important in the healthcare field, and the color purple on medical exam gloves serves to help prevent infection.

249.    As can be seen, the color purple provides utilitarian benefits in several applications involving medical exam gloves.

250.    Under Fifth Circuit precedent, therefore, the marks in the PURPLE '539 Registration and the PURPLE '894 Registration are functional under the traditional test for functionality.

251.    In the Fifth Circuit, under the competitive necessity test a feature of a mark such as color is one "the exclusive use of which would put competitors at a significant non-reputation-related disadvantage."

252.    As has been shown above, purple on medical exam gloves contrasts well with bodily fluids and other colored gloves in double-gloving situations. Purple is also preferred as a warmer color than blue and provides an excellent alternative for patients allergic to Blue #2. Purple is also useful in color coding scenarios in which healthcare workers must quickly distinguish between types of gloves or between Latex and Nitrile or other synthetic gloves.

253.    Allowing Halyard to have exclusive rights in purple, especially all shades of purple, would make permanent a competitive advantage for Halyard by preventing Sri Trang and other competitors from effectively competing for the business of entities that seek purple gloves because of the benefits purple provides.

254.    Because Halyard's trademark for the color purple places Sri Trang and other competitors at a substantial, nonreputation-based disadvantage, the marks in the PURPLE '539 Registration and the PURPLE '894 Registration are functional under the competitive necessity test for functionality.

255.    Accordingly, because the purple color in Halyard's PURPLE '539 Registration and PURPLE '894 Registration are functional both under the traditional test and the competitive necessity test for functionality, the Court should order the USPTO to cancel the PURPLE '539 Registration and the PURPLE '894 Registration.

**COUNTERCLAIM – COUNT VIII**
**Cancellation Of The GRAY '962 Supplemental Registration Because**
**The GRAY Color Mark Is Functional Under**
**The Traditional Test And the Competitive Necessity Test**

256.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101- 255 of its Counterclaims as if fully set forth herein.

257.    Halyard's materials, those of its licensees, and third-party references show that the color gray has utilitarian benefits in several applications.

258.    An article entitled "Does Glove Color Matter?", found on the website at hourglass-intl.com, states that that "[h]ealth care facilities often prefer a colored nitrile. This helps staff differentiate between latex and non-latex gloves." It further states that "[a] shade of blue is the traditional nitrile color of choice in medical facilities. But in recent years other colors such as gray, purple, and pink have become common." (Ex. 36.)

259.    The website for Your Glove Source shows the utilitarian functionality of the color gray: "As tradition holds most medical facilities still use a blue shade of Nitrile gloves, although other colors such as grey, purple and pink nitrile gloves are being used as well. A particular interesting use of different colored Nitrile gloves helps medical professionals recognize glove failure. For example wearing a red glove under a gray glove will help a medical professional notice when the gray glove has been punctured or ripped, because the red glove will show through." (Ex. 37.)

260. Because the color "gray" encompasses a broad spectrum of light and dark shades of gray, gray colored gloves are useful as both outer and under layers in double-gloving applications to provide contrast with other colors.

261. On Halyard's own website, the function of the color gray on Registrant's gray-colored gloves complements the function of the color pink on Registrant's pink-colored under gloves, so that together they provide "visible breach protection". (Ex. 31.)

262. An article entitled "What Color is Your Single Use?" states that gray "is like black in that it doesn't show dirt and is used in similar applications. It's [sic] lighter color makes hands more visible – which is helpful in lower light conditions, or when teams of people are working together on a task and you want to be able to see where everyone's hands are." (Ex. 38.)

263. Studies are showing that in a medical environment, older patients do not like the color blue and that younger patients dislike white. As a result, healthcare professionals are moving away from light blue and white exam gloves to other colors such as gray.

264. Infection prevention is very important in the healthcare field, and the color gray on medical exam gloves serves to help prevent infection.

265. As has been shown, the color gray provides utilitarian benefits in several applications involving medical exam gloves.

266. Under Fifth Circuit precedent, therefore, the mark in the GRAY '962 Supplemental Registration is functional under the traditional test for functionality.

267. In the Fifth Circuit, under the competitive necessity test a feature of a mark such as gray color is one "the exclusive use of which would put competitors at a significant non-reputation-related disadvantage."

**DEFENDANTS' AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS** – Page 37

268.    As has been shown above, gray on medical exam gloves contrasts well with bodily fluids and other colored gloves in double-gloving situations. Gray also provides an excellent alternative for patients allergic to Blue #2. Gray is also useful in color coding scenarios in which healthcare workers must quickly distinguish between types of gloves or between Latex and Nitrile or other synthetic gloves.

269.    Allowing Halyard to have exclusive rights in gray, especially all shades of gray, would make permanent a competitive advantage for Halyard by preventing Sri Trang and other competitors from effectively competing for the business of entities that seek gray gloves because of the benefits gray provides.

270.    Because Halyard's trademark for the color gray places Sri Trang and other competitors at a substantial, nonreputation-based disadvantage, the mark in the GRAY '962 Supplemental Registration is functional under the competitive necessity test for functionality.

271.    Accordingly, because the gray color in Halyard's GRAY '962 Supplemental Registration is functional both under the traditional test and the competitive necessity test for functionality, the Court should order the USPTO to cancel the GRAY '962 Supplemental Registration.

## COUNTERCLAIM-COUNT IX
### Cancellation Of The PURPLE '539 Registration And The PURPLE '894 Registration Because The PURPLE Color Marks Are Overbroad, Ambiguous, And Not Specific To The Mark Actually Used

272.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101-271 of its Counterclaims as if fully set forth herein.

273.    The application underlying the PURPLE '539 Registration, U.S. Trademark Application Serial No. 75640743, was filed on February 12, 1999, on an intent-to-use basis. The

application was amended to the Principal Register on July 28, 2000, with a claim of acquired distinctiveness under Section 2(f), and matured to registration on July 23, 2002.

274.    The PURPLE '539 Registration identifies the following goods:

Class 9: Protective gloves for industrial use, and disposable nitrile gloves for use in laboratories and cleanroom environments.

Class 10: Gloves for medical and surgical uses.

275.    The description in the PURPLE '539 Registration states as follows: "The mark consists of the color purple as applied to the goods. The dotted outline of the goods is intended to show the position of the mark and is not a part of the mark. The drawing is line [sic] for the color purple."

276.    The application underlying the PURPLE '894 Registration, U.S. Trademark Application Serial No. 78241456, was filed on April 24, 2003, on a Section 1(a) basis, and matured to registration on June 6, 2006, on the Principal Register with a claim of acquired distinctiveness under Section 2(f).

277.    The PURPLE '894 Registration identifies the following goods:

Class 21: Disposable nitrile gloves for general use.

278.    The description in the PURPLE '894 Registration states as follows: "The mark consists of the Color Purple as applied to the goods. The dotted outline of the goods is intended to show the position of the mark and is not a part of the mark. The drawing is lined for the color(s) purple."

279.    Pursuant to the Trademark Act Section 18, Sri Trang seeks partial cancellation or restriction of the PURPLE Registrations for the color purple by restricting the description in each

to the single shade of purple, by Pantone color or similar measure, that Halyard has used in U.S. commerce.

280.    This Court may determine the registrability of the PURPLE Registrations pursuant to Trademark Act Section 37, 15 U.S.C. § 1119, because the determination of trademark registrability is not within the exclusive jurisdiction of the United States Patent and Trademark Office.

## STANDING

281.    Sri Trang is a direct competitor to Halyard in the U.S. market for protective and medical gloves.

282.    Sri Trang's parent company first opened a distribution center in the United States in 1998, and has been selling protective and medical gloves of many colors to U.S. consumers for over 25 years.

283.    Across the United States, Sri Trang's protective and medical gloves are relied on by healthcare providers to protect them, their patients, and their families from various toxins, thereby allowing them to perform their vital task of treating the weak and ill.

284.    Against the backdrop of the Covid Pandemic, the constricted availability of protective gear, and continuing supply chain bottlenecks for medical gloves, on July 12, 2022, Halyard served on Sri Trang a cease and desist letter claiming that Sri Trang infringed Halyard's purple color trademarks by selling gloves that Sri Trang referred to as the color orchid.

285.    On July 21, 2022, Halyard filed the instant lawsuit against Sri Trang alleging, among other things, that Sri Trang infringed Halyard's purported trademark rights in the color purple by selling the gloves that Sri Trang referenced as the color orchid.

286.    Upon receiving notice of Halyard's allegations, Sri Trang immediately stopped the sale of its orchid gloves in the United States. In addition, Sri Trang stopped selling gloves it referred to as the color lilac, which was not subject to Halyard's lawsuit but could potentially fall within the purple family of colors.

## GROUNDS FOR RESTRICTION

287.    A claim under Trademark Act Section 18 is a request for equitable relief and does not require pleading and proof of specific grounds for cancellation. Relief under Section 18 may be sought separately from any other ground.

288.    Sri Trang requests that, under the provisions of Section 18, this Court partially cancel or restrict the PURPLE Registrations because they are overly broad, ambiguous, and not specific to the mark actually used by Halyard. Moreover, these registrations were granted based on acquired secondary meaning under Section 2(f) and should therefore be restricted to the individual shade of purple for which Halyard claimed secondary meaning under Section 2(f) when the PURPLE Registrations were granted.

289.    The restriction requested would avoid a finding of likelihood of confusion between the mark in Halyard's PURPLE Registrations and Sri Trang's lilac-colored protective and medical gloves. Such a restriction would also prevent a finding of likelihood of confusion between Halyard's mark and other colors of gloves sold by Sri Trang, including those that Sri Trang has described as "violet", "violet blue", and "lavender blue".

290.    Sri Trang further requests that this Court partially cancel or restrict the PURPLE Registrations because they each claim more than one mark. "Purple" is not a single color; rather, it is a family of colors whose family members include a wide range of colors extending from near

white on one end of the spectrum to near black on the other end, with periwinkle, lavender, pink, indigo, violet, maroon, and other members in between.

291.    Exhibit 66, from Pittsburgh Paints, demonstrates the variety of members of the color family known as "purple" and the vast, indefinite scope of the color for which the PURPLE Registrations currently stand unrestricted.

292.    Pursuant to Sections 1 and 45 of the Trademark Act, a trademark registration can claim only one mark. In direct violation of this Black-letter rule, the PURPLE Registrations claim a large number of substantially different marks.

293.    Restricting Halyard's PURPLE Registrations to a single mark – the actual color for which it provided evidence to support a claim of acquired secondary meaning at the time of grant – will provide equitable relief to Sri Trang. Specifically, restriction would allow Sri Trang to sell protective and medical gloves to healthcare professionals, first responders, and the like in a variety of colors without risk of a likelihood of confusion with Halyard's overly broad and ambiguous registrations that improperly encompass multiple marks.

294.    Accordingly, the PURPLE Registrations should be restricted to the individual shade of purple actually used by Halyard in the marketplace and for which it claimed secondary meaning under Section 2(f) when the PURPLE Registrations were granted.

## COUNTERCLAIM-COUNT X
### Cancellation Of The GRAY '962 Supplemental Registration Because The GRAY Color Mark Is Overbroad, Ambiguous, And Not Specific To The Mark Actually Used

295.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101-294 of its Counterclaims as if fully set forth herein.

296.    Halyard filed the application underlying U.S. Trademark Registration No. 5613962 (the "GRAY '962 Supplemental Registration") on August 13, 2018, seeking registration on the Principal Register.

297.    The genus of the Class 10 goods in the GRAY '962 Supplemental Registration is medical gloves.

298.    According to Halyard, the mark in the GRAY '962 Supplemental Registration "consists of the color gray applied to gloves" without limitation to specific shades of gray.

299.    Halyard purports to own exclusive trademark rights to all shades of the color gray when used in connection with the goods identified in the GRAY '962 Supplemental Registration.

300.    On information and belief, however, Halyard has used only two shades of gray in connection with the goods identified in the GRAY '962 Supplemental Registration: one represented by or substantially similar to Pantone Cool Gray 6 C ("Pantone 6 C"), which is a darker gray, and the other represented by or substantially similar to Pantone Cool Gray 4 C ("Pantone 4 C"), a lighter gray.

301.    Pursuant to the Trademark Act Section 18, Sri Trang seeks partial cancellation or restriction of the GRAY '962 Supplemental Registration for the color gray by restricting the description in each to the single shade of gray, by Pantone color or similar measure, that Halyard has used in U.S. commerce.

302.    This Court may determine the registrability of the GRAY '962 Supplemental Registration pursuant to Trademark Act Section 37, 15 U.S.C. § 1119, because the determination of trademark registrability is not within the exclusive jurisdiction of the United States Patent and Trademark Office.

## STANDING

303.    Sri Trang is a direct competitor to Halyard in the U.S. market for protective and medical gloves.

304.    Sri Trang's parent company of first opened a distribution center in the United States in 1998, and has been selling protective and medical gloves of many colors to U.S. consumers for over 25 years.

305.    Across the United States, Sri Trang's protective and medical gloves are relied on by healthcare providers to protect them, their patients, and their families from various toxins, thereby allowing them to perform their vital task of treating the weak and ill.

306.    Against the backdrop of the Covid Pandemic, the constricted availability of protective gear, and continuing supply chain bottlenecks for medical gloves, on July 12, 2022, Halyard served on Sri Trang a cease and desist letter claiming that Sri Trang infringed Halyard's gray color trademark.

307.    On July 21, 2022, Halyard filed the instant lawsuit against Sri Trang alleging, among other things, that Sri Trang infringed Halyard's purported trademark rights in the color gray.

308.    Upon receiving notice of Halyard's allegations, Sri Trang immediately stopped the sale of its gray-colored gloves in the United States.

## GROUNDS FOR RESTRICTION

309.    A claim under Trademark Act Section 18 is a request for equitable relief and does not require pleading and proof of specific grounds for cancellation. Relief under Section 18 may be sought separately from any other ground.

310.    Sri Trang requests that, under the provisions of Section 18, this Court partially cancel or restrict the GRAY '962 Supplemental Registration because it is overly broad, ambiguous, and not specific to the mark actually used by Halyard. Moreover, this registration was granted based on acquired secondary meaning under Section 2(f) and should therefore be restricted to the individual shade of purple for which Halyard claimed secondary meaning under Section 2(f) when the GRAY '962 Supplemental Registration was granted.

311.    The restriction requested would avoid a finding of likelihood of confusion between the mark in Halyard's GRAY '962 Supplemental Registration and Sri Trang's gray-colored protective and medical gloves. Such a restriction would also prevent a finding of likelihood of confusion between Halyard's mark and other colors of gray gloves sold by Sri Trang.

312.    Sri Trang further requests that this Court partially cancel or restrict the GRAY '962 Supplemental Registration because it claims more than one mark. "Gray" is not a single color; rather, it is a term that refers to an extremely wide range spanning cool and warm varieties, light and dark, as well as neutral and saturated to a degree.  There is no hard line or definition about when a specific color is contains a high enough percentage of saturation to be considered a color rather than variety of gray. The color space that would commonly be identified a gray is a huge percentage of the visible spectrum. The hues of gray used by Halyard are just two of the discernable hues within that wide range of the color.

313.    Exhibit 67, from Behr, demonstrates the variety of members of the color family known as "gray" and the vast, indefinite scope of the color for which the GRAY '962 Supplemental Registration currently stands unrestricted.

314.    Pursuant to Sections 1 and 45 of the Trademark Act, a trademark registration can claim only one mark. In direct violation of this Black-letter rule, the GRAY '962 Supplemental Registration claims a large number of substantially different marks.

315.    Restricting Halyard's GRAY '962 Supplemental Registration to a single mark – the actual color for which it provided evidence to support a claim of acquired secondary meaning at the time of grant – will provide equitable relief to Sri Trang. Specifically, restriction would allow Sri Trang to sell protective and medical gloves to healthcare professionals, first responders, and the like in a variety of colors without risk of a likelihood of confusion with Halyard's overly broad and ambiguous GRAY '962 Supplemental Registration that improperly encompasses multiple marks.

316.    Accordingly, the GRAY '962 Supplemental Registration should be restricted to the individual shades of gray actually used by Halyard in the marketplace and for which it claimed secondary meaning under Section 2(f) when the GRAY '962 Supplemental Registration was granted.

**COUNTERCLAIM – COUNT XI**
**False And Fraudulent Registration Under 15 U.S.C. Section 1120 Of**
**The PURPLE '539 Registration And PURPLE '894 Registration**

317.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101- 316 of its Counterclaims as if fully set forth herein.

318.    Under 15 U.S.C. Section 1120, a party is civilly liable when it procures registration in the USPTO of a mark by a false or fraudulent declaration or representation, either orally or in writing.

319.    Halyard's predecessor stated during prosecution of the PURPLE '539 Registration that its mark "consists of the color purple" without limitation to the single shade of purple. This

was a false statement, as Halyard at most used one shade of purple, Warm Purple as herein construed.

320.    Halyard further stated that the color purple, without limitation, had acquired distinctiveness, even though it only used Warm Purple and could not have acquired distinctiveness as to all shades of purple.

321.    Specifically, Halyard's predecessor's declaration stated that "Applicant's mark the COLOR PURPLE is distinctive as applied to the goods specified in the above-identified application."

322.    The predecessor stated, in its July 28, 2000, response to the examining attorney's refusal of the underlying application, that the "COLOR PURPLE", without any limitation, had acquired distinctiveness under Section 2(f) of the Trademark Act, even though only the single shade Warm Purple had ever been used and could have acquired distinctiveness. (Ex. 2.)

323.    Halyard's predecessor similarly stated during prosecution of the PURPLE '894 Registration that its mark "consists of the color purple" without limitation to specific shades of purple.

324.    The PURPLE '894 Registration was obtained based on the false assertion that the color purple, without limitation, had acquired distinctiveness as to the identified goods.

325.    Specifically, Halyard's predecessor stated, in its June 7, 2004, response to an office action, that the mark had "acquired distinctiveness and therefore is eligible for registration on the Principal Register under Section 2(f) of the Trademark Act." (Ex. 3.)

326.    Halyard is not using and have never used every shade of the color purple in connection with the goods identified in the purple color registrations. Rather, it has used only Warm Purple, and more recently Lavender Purple, as herein construed.

**DEFENDANTS' AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS** – Page 47

327.    As a result, despite Registrant's sworn statements to the contrary, the marks in the PURPLE '539 Registration and the PURPLE '894 Registration could not have acquired distinctiveness as to any shade of purple other than Warm Purple as used in commerce in connection with the identified goods.

328.    The Registrant's and its predecessors' statements that the marks in the PURPLE Registrations had acquired distinctiveness were therefore willfully and intentionally designed to mislead the examining attorney as to the scope of protection – all shades of purple – which Halyard and its predecessors sought but which was deceptively expansive in light of use in commerce only of Warm Purple.

329.    But for these willful and intentional false statements, the examining attorney would have limited the marks, through use of a Pantone color or similar objective standard, in the PURPLE '539 Registration and the PURPLE '894 Registration to the specific shade of purple actually used in commerce and for which secondary meaning was obtained.

330.    Halyard's filing of the LAVENDER Color Mark '256 Application in 2022 provides a strong inference that Halyard understands that the PURPLE '539 Registration and the PURPLE '894 Registration are susceptible to attack for overbroad statements at prosecution, and also that they were procured with false statements.

331.    Halyard's failure to limit the scope of its PURPLE Registrations following its purported use of and application for LAVENDER Purple demonstrates willful, knowing, and continuing deception on the USPTO.

332.    But for Halyard's continuing material deception, the USPTO would have limited the scope of the color purple protected by the PURPLE '539 Registration and the PURPLE '894 Registration to the only shades of purple used by Registrant in commerce.

333.    In addition, Halyard has recently filed maintenance documents that are untruthful and continue the material deception it has perpetrated on the USPTO. On July 25, 2022, Halyard filed a Declaration of Use under Sections 8 and 9 whereby it swore that the mark is in use in commerce on or in connection with all goods in International Class 009 for its registration, which covers "protective gloves for industrial use, and disposable nitrile gloves for use in laboratories and cleanroom environments." Yet, Halyard's own witnesses have testified that they are not aware of Halyard selling purple-colored surgical gloves. As a result, Halyard is seeking to maintain and continue broader rights than it is entitled.

334.    Halyard has used this overbroad purported right in the color purple to its own benefit and to the detriment of Sri Trang.

335.    Indeed, in the cease and desist letter Halyard sent to Sri Trang, Halyard repeated the false statement of overbroad rights to seek to prevent Sri Trang from using any shade of purple or "any marks confusingly similar" to Halyard's purple marks, further expanding its purported rights even beyond all shades of purple. (Dkt. 1-5.)

336.    Accordingly, under 15 U.S.C. Section 1120, the Court should issue an order to the USPTO to cancel the PURPLE '539 Registration and the PURPLE '894 Registration.

337.    Sri Trang has suffered damages as a result of Halyard's fraudulent procurement and maintenance of these registrations and has suffered irreparable harm. And, unless Halyard is enjoined from claiming rights in every shade of purple and shades of others beyond all shades of purple Halyard deems "confusingly similar" to purple, Sri Trang will continue to suffer irreparable harm.

## COUNTERCLAIM XII
### False And Fraudulent Registration Under 15 U.S.C. Section 1120 Of
### The GRAY '962 Supplemental Registration

338.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101- 337 of its Counterclaims as if fully set forth herein.

339.    Halyard stated during prosecution of the GRAY '962 Supplemental Registration that its mark "consists of the color gray applied to gloves" without limitation to specific shades of gray.

340.    But Halyard is not using and has never used every shade of the color gray in connection with the goods identified in the GRAY '962 Supplemental Registration.

341.    Rather, Halyard is using and has used the mark in the GRAY '962 Supplemental Registration only as to Pantone 6 C and Pantone 4 C as herein construed.

342.    But for Halyard's willful and intentional deception, the examining attorney would have limited the mark, through use of Pantone color or similar objective standard, in the GRAY '962 Supplemental Registration to the two specific shades of gray actually used in commerce.

343.    Halyard made additional intentionally false statements during prosecution of the GRAY '962 Supplemental Registration, which were material and but for which registration on the Supplemental Register would not have been granted.

344.    In its September 18, 2018, office action, the examining attorney set forth a series of eight questions in an "Information Request" and required Registrant to respond to each. (Ex. 39.)

345.    Several of Halyard's responses were materially and intentionally false, each made with the intent to deceive the USPTO.

346.    The first question inquired whether "the identified color(s) serve(s) any purpose as used on goods." Halyard falsely stated that the identified color "does not serve any purpose beyond that of a trademark as used on the goods." (Exhibit 2.)

347.    Considering the well-known use of gray on medical gloves to distinguish between types of gloves, the use of gray in double-gloving techniques, and other functional uses of the color gray on gloves, Halyard's statement was knowingly false. (See, e.g., Exhibits 7-8.)

348.    The fifth question asked whether there was "any other similar use of color in applicant's industry." Halyard falsely stated that it "is the only one using the identified color on medical gloves."

349.    Halyard's statement was knowingly false, as competitors of Halyard were using at the time of Registrant's response, and are now using, the color gray on medical gloves. (See, e.g., Exhibits 3-6.)

350.    Halyard's response to the sixth question, which asked whether Halyard had "any other similar use of color by applicant," was knowingly false. Halyard answered that it "does not use the identified color on other products."

351.    But Halyard holds a supplemental registration for the color gray, U.S. Trademark Registration No. 5619321, for "medical gowns; surgical gowns" in Class 10. Halyard asserted July 1, 2016, as a first use in commerce date of gray in connection with gowns, which precedes the false statement made by Halyard to question number six, that it "does not use the identified color on other products." As a result, the false statement was knowing and intentionally deceitful.

352.    Finally, Halyard falsely stated in its answer to question number 8 that "[c]ompetitors do not use the identified color."

353.    The cumulative effect of the multiple knowingly false statements by Halyard during the prosecution of the GRAY '962 Supplemental Registration is that, but for these falsehoods, the examining attorney would have refused registration.

354.    Under these facts, Halyard has knowingly made numerous false and material statements of fact in connection with the application underlying the GRAY '962 Supplemental Registration. These false statements were made by Halyard with the intent to deceive the USPTO for the purpose of securing rights to every shade of gray.

355.    Halyard has used this overbroad purported right in the color gray to its own benefit and to the detriment of Sri Trang.

356.    Indeed, in the cease and desist letter Halyard sent to Sri Trang, Halyard repeated the false statement of overbroad rights to seek to prevent Sri Trang from using any shade of gray or "any marks confusingly similar" to Halyard's gray marks, further expanding its purported rights even beyond all shades of gray. (Dkt. 1-5.)

357.    As a consequence, under 15 U.S.C. Section 1120, the Court should issue an order to the USPTO to cancel the GRAY '962 Supplemental Registration.

358.    Sri Trang has suffered damages as a result of Halyard's fraudulent procurement and maintenance of this registration and has suffered irreparable harm. And, unless Halyard is enjoined from claiming rights in every shade of gray and shades of others beyond all shades of gray Halyard deems "confusingly similar" to gray, Sri Trang will continue to suffer irreparable harm.

## COUNTERCLAIM – COUNT XIII
### False Advertising Under 15 U.S.C. § 1125(a)

359.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101- 358 of its Counterclaims as if fully set forth herein.

360.    In the Fifth Circuit, a successful claim for false advertising requires (1) a false or misleading statement of fact about a product, (2) that such statement either deceived, or had the potential to deceive, a substantial segment of potential consumers, (3) the deception is material, in that it likely will influence the consumers' purchasing decisions, (4) the product is in interstate commerce, and that the plaintiff, here Sri Trang, has been or is likely to be injured as a result of the statement at issue.

361.    The medical exam page on Halyard's website uses asterisks to indicate that the each term to which they are affixed is a "[r]egistered Trademark or Trademark" of Halyard. (Ex. 22.)

362.    As a result, Halyard is informing potential customers that, in every instance an asterisk is used, Halyard has exclusive rights over the term, and by implication the color of glove, and that therefore the customer must purchase the product from Halyard.

363.    But Halyard uses the asterisk not only with marks it has registered and arguably has rights to, such as HALYARD and STERLING, but also with BLUE NITRILE, which it does not. (Ex. 22; Ex. 43.)

364.    Halyard cannot plausibly state that it has any exclusive rights to "BLUE", "NITRILE", or "BLUE NITRILE". Indeed, the color blue and term "blue" are ubiquitous in the medical glove environment, as exhibits to these Counterclaims have shown. (Exs. 34-37; *see also,* Exs. 44-45.)

365.    For example, Sri Trang has sold multiple billions of medical gloves in the United States since 2010 that are the color blue and have been color coded as "blue". From 2009 Sri Trang sold medical gloves in the U.S. under the color codes "blue", "lavender blue", and "violet blue" – descriptive terms.

366.    Halyard's statement that it owns exclusive rights to "blue nitrile" is therefore willfully false and intended to deceive potential customers.

367.    Similarly, Halyard, through use of the asterisk next to LAVENDER NITRILE, is claiming exclusive rights to the color lavender and the term "lavender". (Ex. 22; Ex. 46.)

368.    But as mentioned, Sri Trang has used the descriptive term "lavender" for well over a decade in connection with medical gloves it sells in the United States.

369.    The potential for customers reviewing Halyard's website, other materials, and sponsored media are very likely to believe that, because Halyard is claiming exclusive rights to the color and term "blue" and also the color and term "lavender", they must purchase blue and lavender-colored gloves, or gloves labelled with the terms "blue" or "lavender", from Halyard.

370.    The deceptive use by Halyard of the asterisk to conflate terms and colors it may plausibly claim to have legitimate trademark rights in with those it clearly does not is very likely to influence consumers to purchase these gloves from Halyard rather than from Sri Trang or other competitors.

371.    Halyard's deceptive advertisements are promulgated in interstate commerce.

372.    Sri Trang has been and will continue to be harmed irreparably by Halyard's claim to purported rights in the terms "blue" and "lavender", both of which Sri Trang has used descriptively for years in connection with medical gloves. Continued advertising by Halyard that only Halyard can use the terms "blue" and "lavender" in connection with medical gloves will cause consumers to cease purchasing Sri Trang's blue and lavender blue color-coded gloves.

373.    Sri Trang has been and will continue to be harmed irreparably by Halyard's claim to purported rights in the colors blue and lavender in connection with medical gloves. Continued advertising by Halyard that only Halyard can use the colors blue and lavender in connection with

medical gloves will cause consumers to cease purchasing Sri Trang's blue and lavender blue color-coded gloves.

374.    Because Halyard's willfully false statements have deceived and will likely continue to deceive consumers in a material way to cease purchasing blue and lavender blue gloves from Sri Trang in interstate commerce, Sri Trang has suffered and will continue to suffer damages.

375.    In addition, absent injunctive relief, Sri Trang will continue to suffer irreparable harm because of Halyard's willful and materially false statements.

376.    For these reasons, the Court should (a) issue an injunction requiring Halyard from expressly or impliedly advertising or claiming it has exclusive rights to use the terms "blue", "nitrile", and "lavender", (b) issue an order to the USPTO that it refuse registration of the LAVENDER Color Mark '256 Application, U.S. Trademark Application No. 97359256, (c) issue an order to the USPTO that it cancel the LAVENDER Word Mark Supplemental Registration, U.S. Trademark Supplemental Registration No. 5342948, and (d) issue an order to the USPTO that it cancel the supplemental registration for the word mark LAVENDER NITRILE, U.S. Trademark Registration No. 5342951, and(e) provide any additional equitable relief it deems appropriate.

## COUNTERCLAIM – COUNT XIV
**Declaratory Judgment That The Mark In The LAVENDER Color Mark '256 Application Is Functional Under The Traditional Test and the Competitive Necessity Test**

377.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101- 376 of its Counterclaims as if fully set forth herein.

378.    The mark in Halyard's LAVENDER Color Mark '256 Application is purple.

379.    As a result, it is functional for the same reasons the marks in the PURPLE '539 Registration and PURPLE '894 Registration are functional under the standard test for functionality as alleged above.

**DEFENDANTS' AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS** – Page 55

380.    In addition, the mark in Halyard's LAVENDER Color Mark '256 Application is functional for the same reasons the marks in the PURPLE '539 Registration and PURPLE '894 Registration are functional under the competitive necessity test for functionality as alleged above.

381.    Accordingly, because the purple "lavender" color in Halyard's LAVENDER Color Mark '256 Application is functional both under the traditional test and the competitive necessity test for functionality, the Court should issue a declaratory judgment that the mark in the LAVENDER Color Mark '256 Application is not registrable in the U.S. Trademark Registry and issue an order to the USPTO to refuse registration of the mark applied for in the pending LAVENDER Color Mark '256 Application.

**COUNTERCLAIM – COUNT XV**

**Declaratory Judgment That The Word Mark In Halyard's Application for ULTRA VIOLET, U.S. Trademark Application No. 97523991, Is Not Capable Of Acquiring Secondary Meaning And Is Therefore Ineligible For Registration**

382.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101- 381 of its Counterclaims as if fully set forth herein.

383.    Halyard has applied in the USPTO for the word mark ULTRA VIOLET, U.S. Trademark Application No. 97523991, seeking registration on the Principal Register for Class 9 goods "Gloves for laboratory purposes; Protective gloves for industrial use" and Class 10 goods "Gloves for medical purposes; Gloves for medical use; Medical gloves; Medical examination gloves; Protective gloves for medical use." (Ex. 47.)

384.    Although Halyard filed the ULTRA VIOLET application on an intent-to-use basis, Halyard is using the purported mark in commerce. (Ex. 48.)

385.    The listing for the ultra violet exam glove on Halyard's website shows that the color visually is blue. Under the specifications, Halyard refers to the color as "violet". (*Id*.)

386.     Safeskin Retailing (HK) Limited, an affiliate or licensee of Halyard, filed with the FDA in September 2022 a 510(k) premarket notification of intent to market a "Violet Nitrile Powder Free Patient Examination Glove". (Ex. 49.) The color of the device is listed under the "Characteristics" section as "violet", as is the color of the predicate device. (*Id*.)

387.      Sri Trang has used since 2019 the descriptive term "violet blue" in connection with medical exam gloves it has sold in the U.S. (Ex. 50.)

388.     Numerous other companies use the descriptive terms "violet" or "violet blue" in connection with medical gloves. (*See, e.g.*, Exs. 51-59.)

389.     On information and belief, Halyard is attempting to claim rights in "ultra violet" so that it can then enforce these purported rights against competitors, including Sri Trang, that use "violet" as a descriptive term.

390.     The Fifth Circuit uses two tests to determine whether a mark is merely descriptive, the "imagination test", under which, if a word conveys information about a product, it is descriptive, and an "alternative test", which asks whether others in the same business would generally need the word to adequately describe their product or service. Under the alternative test, if those in the same business need to use the term for the same goods, the term is generic or highly descriptive.

391.     In this instance, Halyard's purported ULTRA VIOLET mark, as its own product descriptions and those of many competitors' show, merely conveys information about the color of the glove.

392.     And, the purported ULTRA VIOLET mark, in particular the "violet" element, is a term that all competitors of Halyard, including Sri Trang, use and need to use to adequately describe their products.

393.    Accordingly, because the term "ultra violet" is generic or highly descriptive of the color violet as used on medical gloves, it is not a trademark. The Court should issue a declaratory judgment that the term "ultra violet" as applied for in U.S. Trademark Application No. 97523991 is not registrable in the U.S. Trademark Registry and issue an order to the USPTO to refuse registration of the term.

## COUNTERCLAIM – COUNT XVI
### Declaratory Judgment That The Mark In The ORANGE And BLACK Color Mark Application Is Functional Under The Traditional Test And the Competitive Necessity Test

394.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101- 393 of its Counterclaims as if fully set forth herein.

395.    Halyard has applied in the USPTO for the color mark ORANGE and BLACK, U.S. Trademark Application No. 90661239, seeking registration on the Supplemental Register for the Class 10 goods "Gloves for medical purposes; Medical examination gloves; Nitrile gloves for medical use; Protective gloves for medical use."

396.    Halyard's own advertising materials show that the orange and black application is functional under the traditional test for functionality.

397.    Specifically, Halyard's website states the following of its reversible glove: under the "features include" section – "Breach detection"; in the Description, Halyard states the reversible glove "has both a black side and a high-visibility orange side that you can use when directing traffic or working in low-visibility situations; "Breach Detection" – with this reversible glove "there is the ability to detect rips and tears by showing the high-visibility orange inner layer through the breach. The orange inner layer is also revealed when removed, which helps reduce the risk of cross contamination and infection." (Ex. 60.)

398.    On Amazon, the benefits listed for Halyard's orange and black gloves include breach protection – "the high-visibility orange inner layer shows through to warn the wearer of a rip or tear" and the reversibility of the black and orange sides provides that "when the black side is worn outside, correctly removed gloves will be orange, indicating compromised used gloves." (Ex. 61.) Third-party sellers refer to Halyard's orange and black gloves the same way. (Ex. 62.)

399.    As can be seen, the orange and black colors provide utilitarian benefits in several applications involving exam gloves.

400.    Under Fifth Circuit precedent, therefore, the mark in the ORANGE and BLACK application are functional under the traditional test for functionality.

401.    Sri Trang has sold black medical gloves in the U.S. for several years. Further, it has a competitive need to sell black gloves, and also orange gloves, in the U.S. Many other glove sellers and manufacturers use the color orange or the color black on medical exam and related gloves.

402.    As has been shown above, Halyard itself admits that orange and black on the reverse sides of exam gloves provides breach detection and also a warning to potential users that the gloves have already been worn, removed, and compromised.

403.    Moreover, by seeking to obtain exclusive trademark rights, as opposed to patent rights, in reversible gloves featuring black on one side and orange on the other, Halyard is surreptitiously seeking to obtain rights it will enforce in black singularly and orange singularly.

404.    Allowing Halyard to have exclusive rights in purple, especially all shades of purple, would make permanent a competitive advantage for Halyard by preventing Sri Trang and other competitors from effectively competing for the business of entities that seek purple gloves because of the benefits purple provides.

**DEFENDANTS' AMENDED ANSWER, DEFENSES, AND COUNTERCLAIMS – Page 59**

405.    Because a trademark registration by Halyard for the colors orange and black on exam gloves would place Sri Trang and other competitors at a substantial, nonreputation-based disadvantage, the marks in the ORANGE and BLACK application is functional under the competitive necessity test for functionality.

406.    Further, although Halyard's ORANGE and BLACK application is pending, were it to register the registration would be susceptible to claims of fraud on the USPTO and under 15 U.S.C. Section 1120 for fraudulent registration.

407.    As has been shown, Halyard itself boasts of the functional purposes of the orange and black reversible gloves.

408.    But in its recently filed response to the examining attorney's office action and request for further information, Halyard claimed falsely and materially that "The colors used in Applicant's Mark serve as source identifiers for goods sold by Applicant. The fact that there are two contrasting colors serve [sic] only to establish that the gloves sold under Applicant's Mark are reversible, with one surface being orange and the other surface being black." (Ex. 63.)

409.    Accordingly, because the orange and black colors working together are functional both under the traditional test and the competitive necessity test for functionality, the Court should issue a declaratory judgment that the mark in U.S. Trademark Application No. 90661239 is not registrable in the U.S. Trademark Registry and issue an order to the USPTO to refuse registration of the applied-for mark.

410.    In the event the application matures to registration during this proceeding, Sri Trang reserves the right to allege claims of fraud on the USPTO and fraudulent registration under 15 U.S.C. Section 1120.

## COUNTERCLAIM – COUNT XVII
### Cancellation Of The GRAY Word Mark Supplemental Registration Because The GRAY Word Mark Is Generic

411.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101- 410 of its Counterclaims as if fully set forth herein.

412.    Halyard holds U.S. Trademark Supplemental Registration No. 5766072 – the GRAY Word Mark Supplemental Registration – for "Medical examination gloves; Nitrile gloves for medical use; Protective gloves for medical use."

413.    The genus of the Class 10 goods in the GRAY Word Mark Supplemental Registration is gray medical gloves.

414.    The term "gray" as used in connection with gray medical gloves has been and is so common in the medical field that the term "gray" cannot serve and has never served as an indicator of source.

415.    Many examples exist in the marketplace for medical gloves in which third parties are using "gray" on gray medical gloves. In each instance, the term is not acting as a source identifier.

416.    Moreover, third parties and entities in the relevant media refer to the "gray" the color of gray gloves.

417.    Halyard's only gray gloves are sold under the trademark STERLING.

418.    Halyard and its licensees use the term "gray" only as a generic term for its STERLING medical gloves.

419.    As can be seen on Halyard's website, the only arguably gray gloves are STERLING-brand gloves. (Ex. 22.)

420.    Halyard's licensees use the term "gray" only as a generic term for the STERLING gloves, which are gray. (*See, e.g.*, Exs. 64-65.)

421.    The primary significance of the term "gray" on Halyard's and its licensees' gloves is merely that the gloves are the color gray. Halyard's purported gray word mark is generic for gray medical exam gloves.

422.    Accordingly, because Halyard's gray word mark is generic and does not indicate source, the Court should order the USPTO to cancel the GRAY Word Mark Supplemental Registration.

## COUNTERCLAIM – COUNT XVIII
### Cancellation Of The GRAY Word Mark Supplemental Registration Because The Mark Has Never Been Used, Has Been  Abandoned Through Non-Use For Over Three Years, And Halyard Has No Intent To Resume Use

423.    Sri Trang realleges and incorporates by reference the allegations set forth in Paragraphs 101- 422 of its Counterclaims as if fully set forth herein.

424.    Halyard uses the STERLING Mark for the gray gloves it sells.

425.    Halyard has used and uses the term "gray" only as a generic term for gray medical gloves.

426.    Review of Halyard's website, those of its licensees including Kimberly-Clark, and the Internet generally shows that Halyard has never used "gray" as a source-identifying term.

427.    Based on reasonable review, neither Halyard's website nor any other media shows any plan by Halyard or any of its licensees to begin use, or resume use, of "gray" as a trademark.

428.    On information and belief, Halyard uses its purported rights in the term "gray" to assist with its enforcement of its purported rights in the gray color mark in the GRAY '962 Supplemental Registration. By attempting to prevent competitors from using the term "gray",

Halyard is attempting to prevent competitors from using the color gray, for which use of the generic term "gray" is essential.

429.    Accordingly, Halyard has abandoned through never using, and not using for over three years, with intent not to resume use, the term "gray" as a mark in connection with all the goods identified in the GRAY Word Mark Supplemental Registration.

430.    For this reason, the Court should order the USPTO to cancel the GRAY Word Mark Supplemental Registration.

## JURY DEMAND

431.    Sri Trang demands a trial by jury on all claims subject to a jury trial.

## PRAYER FOR RELIEF

Defendant and Counter Plaintiff Sri Trang Gloves (Thailand) Public Company Limited, respectfully prays for judgment against Plaintiff and Counter Defendant O&M Halyard, Inc. as follows:

1.    Declaring that the color marks in the PURPLE '539 Registration, PURPLE '894 Registration, and GRAY '962 Supplemental Registration are not legally protectable trademarks and that Sri Trang is not infringing those marks by the sale of its products;

2.    Declaring that the Halyard Color Marks are not famous and that Sri Trang has not diluted and cannot dilute, by blurring or by tarnishment, any of the Halyard Color Marks;

3.    Finding that Halyard's PURPLE Color Marks are generic and do not indicate source and ordering the United States Patent and Trademark Office to cancel the PURPLE '539 Registration and the PURPLE '894 Registration;

4.      Finding that Halyard's gray color mark is generic and does not indicate source and ordering the United States Patent and Trademark Office to cancel the GRAY '962 Supplemental Registration;

5.      Ordering the United States Patent and Trademark Office to restrict by specific Pantone number the descriptions of the PURPLE '539 Registration and the PURPLE '894 Registration to the specific shade of purple referred to herein as Warm Purple;

6.      Ordering the United States Patent and Trademark Office to restrict by specific Pantone numbers the description of the GRAY '962 Supplemental Registration to the two specific shades of gray referenced herein;

7.      Finding the purple color in Halyard's PURPLE '539 Registration and PURPLE '894 Registration is functional both under the traditional test and the competitive necessity test for functionality, and ordering the United States Patent and Trademark Office to cancel the PURPLE '539 Registration and the PURPLE '894 Registration;

8.      Finding the gray color in Halyard's GRAY '962 Supplemental Registration is functional both under the traditional test and the competitive necessity test for functionality, and ordering the United States Patent and Trademark Office to cancel the GRAY '962 Supplemental Registration;

9.      Ordering, pursuant to Section 18 of the Trademark Act (15 U.S.C. Section 1068), the United States Patent and Trademark Office to restrict Halyard's PURPLE Registrations to the individual shade of purple Halyard actually uses in the marketplace for which it claimed secondary meaning when the Purple Registrations were granted;

10.     Ordering, pursuant to Section 18 of the Trademark Act (15 U.S.C. Section 1068), the United States Patent and Trademark Office to restrict Halyard's GRAY '962 Supplemental

Registration to the individual shades of gray Halyard actually uses in the marketplace for which it claimed secondary meaning when the GRAY '962 Supplemental Registration was granted;

11.    Ordering, pursuant to 15 U.S.C. Section 1120, the United States Patent and Trademark Office to cancel the PURPLE '539 Registration and the PURPLE '894 Registration as a result of Halyard's fraudulent procurement and maintenance of those registrations;

12.    Ordering, pursuant to 15 U.S.C. Section 1120, the United States Patent and Trademark Office to cancel the GRAY '962 Supplemental Registration as a result of Halyard's fraudulent procurement and maintenance of that registration;

13.    Issuing an injunction preventing Halyard from expressly or impliedly advertising or claiming it has exclusive rights to use the terms "blue", "nitrile", and "lavender";

14.    Ordering the United States Patent and Trademark Office to refuse registration of the LAVENDER Color Mark '256 Application, U.S. Trademark Application No. 97359256;

15.    Ordering the United States Patent and Trademark Office to cancel the LAVENDER Word Mark Supplemental Registration, U.S. Trademark Supplemental Registration No. 5342948;

16.    Ordering the United States Patent and Trademark Office to cancel the supplemental registration for the word mark LAVENDER NITRILE, U.S. Trademark Registration No. 5342951;

17.    Finding that the purple "lavender" color in Halyard's LAVENDER Color Mark '256 Application is functional both under the traditional test and the competitive necessity test for functionality, and is therefore not registrable in the U.S. Trademark Registry, and ordering the United States Patent and Trademark Office to refuse registration of the mark applied for in the pending LAVENDER Color Mark '256 Application;

18.    Finding that the term "ultra violet" as applied for in U.S. Trademark Application No. 97523991 is not registrable in the U.S. Trademark Registry and ordering the United States Trademark Office to refuse registration of the term;

19.    Finding that the mark in U.S. Trademark Application No. 90661239 is not registrable in the U.S. Trademark Registry and ordering the United States Patent and Trademark Office to refuse registration of the applied-for mark;

20.    Finding that Halyard's gray word mark is generic and does not indicate source, and ordering the United States Patent and Trademark Office to cancel the GRAY Word Mark Supplemental Registration, U.S. Trademark Supplemental Registration No. 5766072;

21.    Finding that Halyard has abandoned the term "gray" as a mark in connection with all the goods identified in the GRAY Word Mark Supplemental Registration and ordering the United States Patent and Trademark Office to cancel the GRAY Word Mark Supplemental Registration, U.S. Trademark Supplemental Registration No. 5766072;

22.    Awarding Sri Trang all damages sustained as a result of Halyard's wrongful conduct, including all compensatory damages, costs and attorneys' fees; and

23.    Awarding Sri Trang any and all relief not here enumerated that the Court deems just and equitable.

Dated: May 30, 2023

Respectfully submitted,

By:  */s/ Brian H. Oates*
Brian H. Oates
Texas Bar No. 24088144
boates@jw.com

JACKSON WALKER LLP
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-6000 / (214) 953-5822 *fax*

Christopher Lay (*Admitted Pro Hac Vice*)
Illinois Bar No. 6295183
clay@iphorgan.com
Dermot Horgan (*Admitted Pro Hac Vice*)
Illinois Bar No. 6220353
dhorgan@iphorgan.com

IPHORGAN LTD
195 Arlington Heights Rd, Ste 125
Buffalo Grove, IL 60089
(847)-808-5500

## CERTIFICATE OF SERVICE

I hereby certify that on May 30, 2023, I caused a copy of the foregoing pleading to be served upon counsel of record for all parties via the Court's ECF system.

*/s/ Brian H. Oates*
Brian H. Oates